## Helm et al. v. Speith et al.
May 19, 1944.

As Modified on Denial of Rehearing

Sept. 29, 1944.

226

James P. Helm, Jr. for appellants.

David R. Castleman for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

George C. Helm and wife sued the appellees, as partners and individually, for $1,500 damages for breach of a building contract. Judgment was entered on a verdict for the defendants, directed at the close of plaintiffs' evidence.

The defendants were engaged in selling lots in a subdivision near St. Matthews, in Jefferson County, and building houses thereon. They sold some of the houses after they were built, some while in course of construction, and in some instances only the vacant lots. When the contract involved here was made only the excavation for the basement had been completed. It appears that the construction of these residences were being financed

by the Louisville Title Company, with the Federal Housing Administration, commonly called the "F. H. A.," insuring or guaranteeing the loans.

On May 5, 1941, the plaintiffs addressed a communication to the defendants offering to buy a certain lot with improvements for $5,675, of which $5,100 was to be obtained from a "F. H. A. loan." It was stipulated that the house was "to be finished in detail as per plans and specifications." This was accepted and the defendants built the house. Some months after possession was taken, it developed that water came into the basement and through the walls during wet seasons and ordinary hard rainfalls. Helm testified that the plans and specifications mentioned in the contract were those of the Federal Housing Administration, and the claim for damages rests on a failure of the defendants to conform to them. The plaintiffs saw blueprint plans of their house, but were given no specifications. However, Mrs. Helm testified to having read or seen one of the pamphlets containing the specifications and conferred about it with a lawyer by whom she was formerly employed. That the contract referred to those prescribed by the Federal Housing Administration is further established by a letter the defendants had addressed to the Louisville Title Company, on April 4th, proposing to build a house on this lot according to plans and specifications submitted with the letter. It was further stated therein: "All work is to be done in a neat and workmanlike manner and is to comply with the minimum construction requirements of the Federal Housing Administration for the State of Kentucky."

It is inferable that this is the house which the plaintiffs bought while in course of construction. Should it be developed that it was not, the evidence would not be competent.

The plaintiffs were not able to present in evidence any blueprint or specifications of the house, except the specifications prescribed by the F. H. A. as to the character of building it would finance, or rather insure a loan upon. A peremptory instruction for the defendants was based upon the ruling of the court that such specifications did not constitute a part of the contract between the parties, and that the plaintiffs had not met the burden of proving a failure by the defendants to build the house according to the plans and specifications.

The plaintiffs introduced in evidence two pamphlets which had been issued by the Federal Housing Administration. One of these prescribed ''Minimum Construction Requirements For New Dwellings,'' which it is declared ''are considered necessary to produce a well-constructed dwelling which will serve as sound security for a long-term mortgage loan.'' These specifications provide:

''1. Where water conditions necessitate dampproofing basements or cellars, the enclosing foundation walls, unless dampproofed in some other manner, shall be parged on the exterior with at least ½ inch of cement plaster. The cement plaster shall be carried down to a cove at the bottom, extending to the outside edge of footing.

''2. If water conditions exist and additional precautions are necessary, the exterior walls below finished grade shall be waterproofed and a sump pit with automatic pump shall be installed, located at the low point of the floor. In cases where water exists under pressure, basement floors shall be waterproofed and reinforced.

''3. A dry basement shall be provided and where dampness or water conditions exist, walls and floors shall be made watertight before final acceptance.''

There are similar and applicable provisions of the same kind in another pamphlet issued by the F. H. A. defining ''Property Standards'' for mortgage insurance under the National Housing Act, 12 U. S. C. A., sec. 1701 et seq.

The evidence with respect to what plans and specifications were meant by the reference in the written contract is not within the rule excluding parol testimony to vary or modify a writing, but is within the rule which admits such testimony to identify and apply the terms of writing to the subject matter, or make definite what was indefinitely expressed. Texas Company v. Bowen, 292 Ky. 676, 167 S. W. 2d 822.

The F. H. A. did not deal with the owner of the property or with the contractor. Its relationship was with the Louisville Title Company, which had agreed to lend money on the building. The requirements and specifications prescribed by the F. H. A. were, therefore, especially for its own benefit, although the state director

and the president of the Title Company testified they were also for the benefit of the property owners as they claim. Doubtless the primary thought of the parties was to be able to obtain the proposed financing, yet the plaintiffs were equally as anxious to obtain a building of the character and construction which such proposition demanded.

Representatives of the F. H. A. inspected the construction from time to time, the Title Company made the loan, and the F. H. A. insured it. The defendants, as appellees, take the position that as the F. H. A. did accept the completed house as security, they performed their building contract fully in so far as the terms relating to F. H. A. are concerned. We do not think the contract between these parties can be so strictly confined. The contract, as evidenced by the writing and the oral identification of the ambiguous reference to plans and specifications, was to build a house according to the plans and specifications prescribed by the F. H. A.. They were, therefore, adopted and integrated into the contract between the parties and cannot be regarded as having been referred to only for the particular purpose of enabling the plaintiffs to obtain the loan. The fact that the F. H. A. may have waived compliance with any of those specifications or provisions, or have accepted the building in ignorance of noncompliance, is not controlling. The plaintiffs did not. Nor does it seem material that the plaintiffs had or had not previously seen those specifications. Both parties agreed they should be part of their contract, whatever they were, and both were bound by them. United Equipment Co. v. D. T. Bohon Co., 203 Ky. 527, 263 S. W. 27; 9 Am. Jur., Building and Construction Contracts, sec. 11. Suppose A should contract to build a house for B like one he had built for C, and that was the only contract between the parties. If the building was not substantially like C's house, would it not be said that A had failed to perform his contract? The plans and specifications for C's house would have to be regarded incorporated into the contract between A and B even though B had never seen them. A contract of that kind was involved in Nance v. Patterson Building Co., 140 Ky. 564, 131 S. W. 484, 140 Am. St. Rep. 398, and it was held that since the uncontradicted evidence showed that the house constructed was not a substantial performance of the contract, the court should have instructed the jury to find for the owner.

It is true that the first two requirements or specifications of the F. H. A. with respect to dampproofing were applicable only under certain conditions. The third specification, however, was absolute in its expression that "A dry basement shall be provided." This must be construed with the other provisions as being the end to be accomplished by following them. A substantial result would meet the specifications. That is the usual judicial construction of such a provision. Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. 2d 980; Weil v. B. E. Buffaloe & Co., 251 Ky. 673, 65 S. W. 2d 704; 17 C. J. S., Contracts, sec. 509. It is within the spirit of the requirements of the F. H. A. as disclosed throughout its publication. The plaintiffs' evidence as to the quantity of water seeping into the basement, and how it came through the walls under conditions which were not abnormal, shows there was no substantial compliance with those specifications. The contractors were not bound to produce a watertight basement but were bound to follow the specifications. Thus it is said in 9 Am. Jur., Building and Construction Contracts, Sec. 9:

"A provision in a contract for the construction of a cellar according to specifications 'the whole to be perfectly watertight and guaranteed' binds the contractor only so far as his own work is concerned, and does not guarantee that the plans will produce a watertight cellar."

See also Culbertson v. Ashland Cement & Construction Co., 144 Ky. 614, 139 S. W. 792; 17 C. J. S., Contracts, sec. 494; MacKnight Flintic Stone Co. v. Mayor, etc., of New York, 160 N. Y. 72, 54 N. E. 661; Filbert v. City of Philadelphia, 181 Pa. 530, 545, 37 A. 545; Bush v. Jones, 3 Cir., 144 F. 942, 6 L. R. A., N. S., 774; Gilbo & Swartz v. Merrill's Estate, 92 Vt. 380, 104 A. 10, L. R. A. 1918F, 387; United States v. Spearin, 248 U. S. 132, 39 S. Ct. 59, 63 L. Ed. 166.

The specifications particularly described the conditions under which dampproofing was required. Paragraph 1 told specifically how it was to be done unless it should be in "some other manner." This clause left the method open. If the specified method was not followed and the contractors adopted and followed a standard, recognized method, or used reasonably good and suitable material and exercised reasonably skillful workmanship, they are not liable for any unsatisfactory result. Hart-

ford Mill Company v. Hartford Tobacco Warehouse Company, Ky., 121 S. W. 477. Paragraph 2 stipulated that "if water conditions exist and additional precautions are necessary," then certain things should be done. It was a matter of proof as to what the conditions were. The evidence introduced by the plaintiffs proved at least that dampproofing was necessary.

There was no evidence as to what the contractors did or did not do to dampproof or waterproof the basement. The plaintiffs' evidence merely described the conditions and what had occurred in order to show that the building was not constructed according to the contract. We summarize the principal conditions described:

The basement had been flooded seven or eight times during the following two winters when there were ordinary rainfalls. On several occasions the water was so deep the plaintiffs could not reach the furnace except by wading. The water poured over the top of the basement walls or foundation, came through the walls and up through the floor. It came under the basement door like a "shower bath going full tilt." In some places the water gushed out through and over the wall a distance of three feet. There were holes and cracks in the wall and floor through which the water seeped or flowed in a trickle. The owners installed a sump pump but at times it would not carry off the water because of the volume.

Proof of performance or breach of a contract to build a house according to plans and specifications may be by circumstantial evidence. We think the evidence introduced by the plaintiffs proved prima facie that the specifications had not been followed or complied with. The burden was thereby cast upon the defendants to go forward and show the contrary.

It is insisted by the appellee that as the third paragraph of the specifications quoted provided that the contractors should build a dry basement and that "the walls and floors shall be made water-tight before final acceptance," and as the appellants had finally accepted the building, there is no liability in any event. A party cannot be allowed to mislead one with whom he deals and then take advantage of his concealed conduct. This house was built in the summertime and the condition described was not revealed until the following rainy season in the late fall and winter. Under the circumstances,

the owners had the right to assume the contractors had complied with the terms of their contract in the particulars about which complaint is made. The plaintiffs, therefore, did not forfeit their claim because they did not discover the defects before they accepted the building. Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. 2d 980; Weil v. B. E. Buffaloe & Co., 251 Ky. 673, 65 S. W. 2d 704.

We are of opinion that the peremptory instruction for the defendants should not have been given, the plaintiffs having also proved damage.

The judgment is reversed.