MONTGOMERY, et ux. *v.* KIMBROUGH HOMES, Inc.

June 9, 1952.

No. 38460 (59 So. (2d) 273)

520

Dan E. Breland, for appellants.

Crisler & Crisler, for appellee.

**Alexander, J.**

Appellants brought an action for damages asserted as having arisen from a breach of a building contract by appellee. From a verdict and judgment in the County Court for the plaintiff an appeal was taken to the Circuit Court where the judgment was set aside on the ground that, under the record, the defendant's request for a directed verdict had been erroneously refused.

The contract as shown by plaintiffs consists of two sheets of blueprint drawings which were furnished to the defendant as the basis for his construction bid thereon which was accepted.

There is no question but that the specifications laid out on the first sheet which covered the foundation plan, and those upon the second sheet laying out the dimensions and locations of the rooms, are irreconcilable. The latter calls for a floor plan approximately two feet larger than those shown on the foundation plan. This discrepancy was called by the plaintiffs to the attention of a representative and general agent of the defendant who was supervising the construction. He was instructed by the defendant to disregard this inconsistency. There were assurances given by such representative that some adjustment would be made but that the cost of razing the foundation so as to enlarge it would be prohibitive in cost. The complaints persisted and plaintiffs were told by Mr. Kimbrough that he would brook no delay in completing the financial arrangements. Such details involved a certificate of acceptance of a loan to be guaranteed by the Federal Housing Administration, and a certificate by plaintiffs for the information of a title company, in which they certified by affidavit that the house had been completed according to plans and specifications.

The defendant exerted considerable pressure upon the plaintiffs to consummate the loan from whose proceeds it was to receive payment under the contract. Such insistence was backed by a threat of eviction, which in turn employed the leverage of plaintiffs' need for immediate housing.

The foregoing recitals, while contradicted, are drawn up in the plaintiffs' favor since the alleged error is based upon the giving of a peremptory instruction for the defendant. There were many details, some of which are vague, but which add up to the fact of a two foot disparity between the two sheets of blueprints. Testimony as to the extent of damage to plaintiffs included estimates of the added cost to build the house two feet wider, and of the comparative values of the house as planned and as constructed. The inconveniences caused to plaintiffs and the financial disadvantages incident to the asserted impossibility of renting one of the rooms in its existing dimensions were also included in the demand.

The arguments by the defendant, appellee here, revolve about the fact that the plans were prepared at the instance of the plaintiffs and the errors are solely their own; that there was no definite or enforceable agreement to adjust the damages at defendant's expense; that plaintiffs accepted the house as completed and certified that it conformed to the specifications.

On the other hand, the plaintiffs contend that the Federal Housing Administration was not a final arbiter as to the compliance with the plans; that the certificate and affidavit were addressed not to the defendant but to a title guaranty company; and that the work was allowed to continue under protest and with an assurance of an adjustment in the final cost.

The circuit court rendered an opinion in support of his action in dismissing the case in which it was held that the assurances of a reasonable adjustment or allowance in cost by Kimbrough and his representative,

if such be a fact, would not create an obligation upon the defendant because of a lack of authority in the agent, a lack of consideration, and the uncertainty of the terms of the so-called new agreement. We are unable to go along with this conclusion. The jury was authorized to find whether there had been a breach of the original contract, and if so, an obligation arose by virtue of such breach and needed neither ratification nor supplemental agreement. ██ ██ It was further held that Kimbrough examined only the first sheet of the plans, made his bid thereon, and began construction without reference to the second sheet. Such procedure was sought to be justified by a practice to ignore the floor plans until that stage of construction had been reached. The jury was not bound to acquit the defendant of negligence or responsibility in this respect. ██ ██ For this reason, the increased cost of taking out and enlarging the foundations is not available to the defendant who utilized the fact of delay and expense incident thereto as pressure upon the plaintiffs to allow the work to proceed, thus practically nullifying the interior floor plans. ██ ██ The proper test is not the cost to the defendant of rectifying the error, but the damage to the plaintiffs by the failure to do so. ██ ██ As stated above, the consent by the plaintiffs that the work be not thus delayed is not, in view of their protest and the assurances of later adjustment, of itself a waiver. If the matter of a new consideration is relevant at all it could as plausibly find place in denying to the defendant the right so to alter the contract to its advantage without consideration.

██ ██ The circuit judge further found immaterial the following language upon the second page of the plans: "Contractor shall check and verify all dimensions". We think it is probably the most pertinent part of the contract. It was the breach of such undertaking which caused the entire damage. We agree with the court's finding on this point that "If the discrepancy had been discovered, it is safe to assume that there

would have been a renegotiation (of the contract)." Such evident fact, however, was charged not against the contractor but against the Montgomerys. Plaintiffs were under no legal duty to check the plans. The defendant came under this duty when he accepted the contract. It is true that the owners had the plans prepared but this is immaterial. The responsibility for checking and verifying all dimensions was assumed by the defendant who accepted the plans and contracted to build the house in conformity therewith. The owner was not bound by the defect in the plans as a legal consequence of submitting them for construction bids thereon. If it was the duty of the plaintiffs to check the dimensions before submission it was all the more the duty of the contractor to do so before bidding and construction. His duty is enhanced by his greater responsibility and ability to do so, and further heightened by the language of the contract. Compare Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A., N. S., 364. Moreover, since the inconsistency was readily found early in the construction it could, and therefore should, have been discovered at the outset.

While the quoted undertaking is brushed aside, █ emphasis is placed upon the affidavit executed by the plaintiffs for the purpose of procuring a loan from an insurance company This affidavit certified that the house had been constructed according to the contract and specifications and was "in all things satisfactory". Such affidavit was not a part of the contract. Its purpose was to aid defendant in getting prompt payment of the amount of his bid from the proceeds of the loan. It was not made to defendant but, as above stated, for a title company. Regardless of its pertinency as circumstantial testimony to support a contention of compliance or waiver, it was not ex proprio vigore a bar to plaintiffs' claim. Kendrick v. White, 75 Ga. App. 307, 43 S. E. (2d) 285; Small v. D. J. Lee & Bros., 4 Ga. App. 395, 61 S. E. 831; Zimmerman v. Marymor, 290 Pa. 299, 138 A. 824, 54

A. L. R. 1252. Certainly the execution, for such purpose on the same document, of a similar sworn statment by the defendant could not aid its cause, especially since Kimbrough testified that the two sheets of plans were later found by him to be incongruous. The facts in this case do not fall into a design exactly duplicated elsewhere although there are numerous cases involving the mere incident of ambiguity.

Although the suit is upon a contract, none was exhibited with the declaration. It rests solely upon the undertaking by the defendant to build the house at a fixed bid in accordance with the terms of the blueprints. It is true that in its answer the defendant pleaded and exhibited a written contract which provided in Article 4: ██ ██ "The said dwelling house shall be constructed to the satisfaction of Federal Housing Administration minimum standards and said institution shall be the final judge of any and all construction requirements."

Such provision did not constitute the Federal Housing Administration as a final arbiter with respect to differences or legal rights of the parties inter sese, especially as to the size and arrangement of rooms. So long as the house was built in conformity with minimum standards of construction its approval would be forthcoming. Such approval in no sense absolved defendant of any legal duty owed to plaintiffs. The Administration could be satisfied by a compliance with requirements which fall short of the satisfaction of the plaintiffs or of the legal duty of the defendant. Helm v. Speith, 298 Ky. 225, 182 S. W. (2d) 635; Speith v. Helm, 301 Ky. 451, 192 S. W. (2d) 376.

The verdict of the jury in the county court was rendered under instructions which authorized them to find whether there had been a breach of the contract by the defendant, which in turn involved any duty of the latter to follow the directions therein, and whether the shortage in dimensions resulted from a breach of the contract. The record contains no assignment of error to the circuit

court, a procedure which that court would better have required in the interest of an orderly procedure. However, there is no cross-appeal here attacking the instructions given to plaintiffs. The defendant procured an instruction submitting the issue whether the contract was breached, and also authorizing the jury to find for it if the jury believed "that the error in the size of the subject dwelling house resulted because of the defective plans furnished the defendant by the plaintiff." Our discussion of the effect of such circumstance indicates what may be understated as quite a liberal instruction.

The plaintiffs sued for damages in the sum of one thousand dollars which allegedly included the depreciated value of the house and its nonadaptability to the comfort of and use by the plaintiffs. The verdict for four hundred and fifty dollars could be supported alone by the diminished cost of construction at the smaller dimension computed on a square foot basis under the testimony. Plaintiffs contend, however, not only that they paid too much but also that they got too little.

The peremptory charge should not have been granted but the judgment of the county court ought to have been affirmed. Such order will therefore be entered here.

Reversed and judgment here for appellants.

**McGehee, C. J.**, and **Hall, Holmes** and **Ethridge, JJ.**, concur.