105 So.2d 75

John D. FOX, Jr.

v.

Julius Clarence WEBB et al.

1 Div. 745.

Supreme Court of Alabama.

Sept. 11, 1958.

Telfair J. Mashburn, Jr., Bay Minette, for appellant.

J. B. Blackburn, Bay Minette, amicus curiae.

W. O. MacMahon, III, Mobile, and Chason & Stone, Bay Minette, for appellees.

STAKELY, Justice.

On the 20th day of September, 1955, John D. Fox, Jr. (appellant), as contractor, and Julius Clarence Webb (appellee) as purchaser, signed a building contract for the contruction of a house to be built in Daphne, Alabama, on a lot jointly owned by Webb and his wife, Leila Glover Webb. As the work proceeded Webb became dissatisfied with the quality of the contractor's work and his failure to conform to the plans and specifications and when Fox terminated his work on the house, still refusing to make changes demanded of him, Webb withheld the last payment.

The contract shows that the agreed price was $8,750. And it is agreed that the amount paid by Webb was $6,171.50. This leaves a remainder of $2,578.50, which Webb refused to pay.

The trial court found, and we think properly so, that the dwelling was not constructed in a workmanlike manner so as to substantially conform to the plans and specifications. To mention a few particulars, the court found as follows. The porch and carporte were to have "C Pine ceiling finish & three ct's L&O." Instead it was finished with quarter inch plywood. The hall walls wcre to be panel pine. Instead they were sheetrock. The counter

tops in the kitchen were to be formica over fir plywood. Instead a different material was used over ¼" plywood, which was criticized during the trial as being "unworkmanlike." There were other unworkmanlike defects such as the roof sagged where a rafter had been spliced and not braced, walls were not plumb, tile in kitchen was bottom side up, ceramic tile in the bathroom was improperly installed, and a long board which had been nailed outside the diagonal sheeting had not been removed before the asbestos siding was installed, thus creating an unsightly ripple.

Fox terminated his work on the house in May of 1956, and on June 5, 1956, filed a lien claim on the house and lot in the probate court for $2,736.06 and on June 6, 1956, filed his bill of complaint in the circuit court for an equal amount. Attached to the bill as Exhibit A and made a part thereof is the contract between the parties, and as Exhibit B the claim of the lien filed in the probate court the previous day. Both Webb and his wife were named as respondents. They in turn filed a cross bill asking for damages in the amount required to complete the house in accordance with the plans and specifications set out in the contract.

The trial court entered a final decree in which he awarded Fox $2,578.50, the remainder due under the contract plus $147.90 for extras, a total of $2,726.40. The court also awarded to Webb damages in the amount of $3,798.54, which left a difference of $1,072.14 and Fox was ordered to pay this amount to Webb.

On this appeal Fox submits three assignments of error:

"1. The Court erred in sustaining appellees' demurrer to the appellant's original bill of complaint.

"2. The Court erred in rendering the Final Decree in this cause dated May 22, 1957.

"3. The Court erred in denying the relief sought by appellant in his bill of complaint as last amended."

■ I. We shall consider the third and first assignments first. So far as the third assignment of error is concerned, the decree awarded to Fox the relief for which he prayed. It was only due to the fact that Webb's award was greater than the award to Fox that the final decree requires Fox to pay the difference to Webb.

The original bill of complaint alleged that both respondents entered into a contract with complainant and yet Exhibit A, the contract, shows on its face that only Webb had signed it. The original paragraph 3 contains the following allegation:

"That on, to-wit: the 20th day of September, 1955, your complainant entered into a written contract with the *respondents,* a copy of which marked Exhibit 'A' is attached hereto, and by reference made a part hereof as though fully set out herein. *. * *."—(Emphasis supplied.)

The demurrer filed to the original bill of complaint takes the position that it affirmatively appears from the bill of complaint that there is no privity of contract between the complainant and the respondent Leila Glover Webb, and that it affirmatively appears that the work and labor alleged to have been done by the complainant was not done at the request of the respondent Leila Glover Webb.

The court sustained the demurrer to the original bill, which was then amended by Fox so that the third paragraph reads as follows:

"That, on, to-wit: the 20th day of September, 1955, your complainant entered into a written contract which the *respondent,* Julius Clarence Webb, a copy of which contract, marked Exhibit 'A' is attached hereto, and, by reference, made a part hereof as though fully set out herein; *that the respondent, Leila Glover Webb, subsequently, ratified, confirmed and adopted the terms and provisions of said written contract;* * * *." (We have italicized to indicate the changes made.)

In this state where appeals are allowable to a decree sustaining or overruling a demurrer to a bill in equity without awarding a final decree, the Alabama Code provides that "nothing in this section shall prevent an assignment of errors on such decrees on appeals taken on the final determination of the cause, if no appeal is taken under this section." § 755, Title 7, Code of 1940. It is enough for us to say that the action of the trial court in sustaining the demurrer to the original bill, if error, was error without injury because it does not appear that the error complained of has injuriously affected the substantial rights of the appellant. Warren v. Crow, 202 Ala. 680, 81 Sb. 636; Supreme Court Rule 45, Code of 1940, Title 7, Appendix.

In this case Fox has received an award of the entire amount he asked for but due to the fact that judgment against him is in a greater amount, he is in the position of being required to pay, instead of receiving payment. It should make no difference to him whether he pays to Webb alone or to both Mr. and Mrs. Webb. Either way, he pays the same amount.

II. As to assignment of error number two, it is insisted by the appellant that the trial court erred in rendering its final decree in this cause for four reasons: (1) The bill of complaint should not have been dismissed as to the appellee Leila Glover Webb. (2) The court ignored the terms of the express contract between the appellant Fox and the appellee Webb. (3) The Court should not have awarded to appellees damages under their cross bill and (4) the Court erred in basing its decree on incompetent testimony.

### Subheading (1)

The amended bill of complaint under which this cause was tried shows that appellee Leila Glover Webb was not a party to the contract for the erection of improvements on her property on which the appellant now claims a lien. It is contended by the appellant, however, that the evidence in this case establishes acts of ratification by Leila Glover Webb of such contract based upon her actions subsequent to the date of the contract and during the construction of the improvements thereunder.

We have considered the evidence very carefully as to whether or not Leila Glover Webb so ratified and confirmed the terms and provisions of the written contract as to make herself liable and to give the complainant the right to a lien on her property. It is our judgment that the evidence is not sufficient to give the complainant this right and is not sufficient to enable the complainant to establish a lien on her property, but we prefer to base our opinion on the proposition that if there was error in this action of the court, it was error without injury, because the substantial rights of Fox were not injuriously affected. Supreme Court Rule 45, Code of 1940, Title 7, Appendix. Only in case the judgment were reversed on other grounds would this position of the complainant require consideration. As we have heretofore pointed out, Fox received an award of the entire amount he asked for. This being true, it should make no difference to him whether or not Mrs. Webb is held liable and a lien established on her property.

### Subheading (2)

It is contended by appellant that the contract made and constituted the Federal Housing Authority an umpire as to whether the construction of the building was in accordance with the terms of the contract and that no mere error or mistake in judgment should vitiate its determination, without a showing of fraud or bad faith on its part in respect to its approval of the building. In support of this proposition appellant cites Alabama Chemical Co. v. International Agricultural Corp., 215 Ala. 381, 110 So. 614; Regional Agricultural Credit Corp. of Washington, D. C. v. Hendley, 251 Ala. 261, 37 So.2d 97. This contention appears to be based on the assumption that the house should be constructed subject to the approval of the Federal Housing Administration. If this were true, of course, the

parties would be bound by the terms of their contract, but in no place in the contract do we find such a provision.

We call attention to the pertinent parts of the contract which are paragraphs First, Second and Fourth. We find these provisions to be clear and unambiguous. The first paragraph provides that the house shall be constructed in accordance with certain FHA approved specifications and blue prints. The first paragraph is as follows:

"The contractor shall erect and build a dwelling house in a substantial and workmanlike manner * * * all in accordance with the description of materials set forth on FHA Form 2005, Case No. 1–505873 and the blue prints agreed to by and between the parties hereto and approved by FHA."

This does not mean that FHA is to approve the dwelling but that the dwelling is to conform to approved FHA plans and specifications, which the parties have placed in their contract.

Paragraph Second is as follows:

"The Contractor shall commence the work to be performed under this contract within one week from the date hereof, and shall in respect to the aforesaid work generally comply with the minimum building and other regulations of the Federal Housing Administration."

Paragraph Second provides that the contractor shall "generally comply with the minimum building and other regulations of the Federal Housing Administration." This merely adopts FHA standards. These standards are set out in FHA publications such as "Minimum Property Requirements," known in the trade as "MPR" and others. As administered under FHA inspectors they have come to exert a strong influence on the quality of work generally accepted in the building trade as workmanlike. The adoption, however, of FHA standards and placing them into a contract is quite different from agreeing to abide by the judgment of FHA inspectors.

The Court of Appeals of Kentucky considered a very similar situation in Helm v. Speith, 298 Ky. 225, 182 S.W.2d 635, and after remandment on second appeal, in Speith v. Helm, 301 Ky. 451, 192 S.W.2d 376. There as here the dwelling was to be constructed to meet minimum FHA plans and specifications and the structure as completed by the contractor had been approved by the FHA inspectors. There as here the purchaser was not satisfied, the only difference being that there the defect was latent and not discovered until after the purchaser had "accepted" the building. The Kentucky Court laid down a rule that, "The fact that the FHA may have waived compliance with any of those specifications or provisions, or have accepted the building in ignorance of noncompliance, is not controlling." Helm v. Speith, 298 Ky. 225, 182 S.W.2d 635, 637.

It then held that the determining factor was the fact that the dwelling constructed was not the result of a substantial performance of the contract.

This case was expressly followed by the Supreme Court of Mississippi in Montgomery v. Kimbrough Homes, 214 Miss. 519, 59 So.2d 273, 276. The contract provided in Article 4:

" 'The said dwelling house shall be constructed to the satisfaction of Federal Housing Administration minimum standards and said institution shall be the final judge of any and all construction requirements." Montgomery v. Kimbrough Homes, 214 Miss. 519, 59 So.2d 273, 276.

The trouble between the parties arose because the sheet of blueprints which showed the foundation gave dimensions of approximately 2 feet smaller than the sheet which showed the floor plan. The purchaser called the attention of the contractor to this discrepancy but the smaller building was constructed and purchaser under pressure to complete finance details, signed an affidavit certifying that the house had been completed according to plans and specifica-

tions. The purchaser brought suit in the county court and received a verdict of the jury under instructions which authorized them to find whether there had been a breach of the contract by the contractor. In the circuit court the contractor had judgment as a result of a peremptory charge in his favor but the Supreme Court of Mississippi rendered judgment for the purchaser on the basis that the contractor had breached the terms of the contract which required "contractor shall check and verify all dimensions."

Speaking of Article 4, set out supra, the Mississippi appellate court said:

"Such provision did not constitute the Federal Housing Administration as a final arbiter with respect to differences or legal rights of the parties inter sese, especially as to the size and arrangement of rooms. So long as the house was built in conformity with minimum standards of construction its approval would be forthcoming. Such approval in no sense absolved defendant of any legal duty owed to plaintiffs. The Administration could be satisfied by a compliance with requirements which fall short of the satisfaction of the plaintiffs or of the legal duty of the defendant. Helm v. Speith, 298 Ky. 225, 182 S.W.2d 635; Speith v. Helm, 301 Ky. 451, 192 S.W.2d 376."—Montgomery v. Kimbrough Homes, 214 Miss. 519, 59 So.2d 273, 276–277.

In the case at bar we hold that FHA approval does not relieve the contractor of his duty to construct the dwelling in accordance with the specifications as set out in paragraph "First" of the contract.

Neither does paragraph "Fourth" provide that FHA shall act as an umpire. Paragraph Fourth is as follows:

"The Purchaser in consideration of the covenants and agreements herein contained hereby agrees to pay to the Contractor a sum in the amount of Eight Thousand Seven Hundred and Fifty Dollars ($8,750.00) to be paid on a 'work completed in a satisfactory manner' basis as follows:

"(a) One-third of total amount on completion of first inspection by FHA authorities.

"(b) One-third of total amount on completion of second inspection by FHA authorities.

"(c) Balance of total amount on final FHA inspection and acceptance * * *."

This paragraph sets out the price and the schedule of payments. In our judgment this means that assuming the work to be completed in a satisfactory manner, Webb agreed to pay Fox one-third of the price at the time of the completion of the first inspection by FHA authorities, one-third of the price at the time of the completion of the second inspection by FHA authorities, and the balance of the price at the time of the completion of the final FHA inspection. We do not consider that this paragraph designated FHA as an umpire and it should not be so construed.

According to our understanding of the record all witnesses except appellant recognized that FHA was only interested in the security of its guarantee to the mortgagee. The parties contemplated that the loan of the Merchants National Bank of Mobile would be guaranteed by FHA and they knew that FHA would not guarantee the loan unless the dwelling met certain FHA minimum building regulations. It was to the interest of both parties that FHA approve the building and for that reason it had to conform with FHA regulations, but this is not to say that appellant was contracting with FHA. His contract was with Webb to build the house in accordance with certain plans and specifications. No action on the part of the FHA authorities could absolve Fox from any legal duty which he owed to Webb.

In the Kentucky and Mississippi cases, supra, the purchaser had "accepted" the dwelling. In the case at bar Webb had

agreed to pay at the time of certain FHA inspections, but the "acceptance" on the one hand and the agreement to pay on the other were conditional on the contractor constructing the building in a substantial and workmanlike manner. In our judgment the proper interpretation of the contract required Fox to build the house in accordance with the plans and specifications and FHA was not nominated or constituted an umpire.

## Subheading (3)

Appellant assigns as error the conclusions of the trial court in awarding to the appellees damages under their cross bill. Included within this question is whether or not the evidence was sufficient to sustain the decree. In reaching a conclusion we shall consider whether there were errors in arithmetic and whether or not the correct measure of damages is supplied.

Carpenters and other experts in the building trade testified that the work Webb had done and the materials which he had purchased were necessary in order to complete the house in accordance with the plans which were a part of the contract. Some of these experts were people who had been hired to do the work, but in addition Cecil Nall, an admittedly reliable local contractor, testified in detail as to many items in the building which did not comply with the requirements of the plans and specifications. So far as we can ascertain none of the witnesses stated that the work as to which he was testifying was all that would be required in order to complete substantially the building in accordance with the plans and specifications.

■ The court found that the work had not been completed by the contractor in accordance with the terms and conditions of the contract. The evidence was heard orally before the court. Under these circumstances, the findings of the trial court have a presumption of correctness. Tilley v. Tucker, 261 Ala. 287, 73 So.2d 923; Spradling v. May, 259 Ala. 10, 65 So.2d 494; Johnson v. Johnson, 259 Ala. 550, 67 So.2d 841.

■ The court found that the amount which was necessary to complete the building in accordance with the terms and conditions of the contract was $3,798.54. It seems to us that the record substantiates such a conclusion. We are not willing to say that the findings of the court were palpably wrong.

From $3,798.54, the amount required to finish the house in accordance with the contract, we subtract $2,726.50, the amount awarded Fox. The remainder is $1,072.14, which is the amount of the decree against Fox.

On the question of damages this court has stated the general law applicable to the present situation as follows:

"'If a contractor has failed to perform his part of the contract, or has performed it in a different manner from that provided by the contract, or abandons the work, the owner can refuse to accept it, and require performance, before being liable on the contract price or a quantum meruit; but he may by word or act, or by a failure to speak or act, accept the partial performance, or performance in a different manner, and thereby waive strict or full performance, and render himself liable on a quantum meruit, less such damages as he may sustain from the contractor's breach, but not for the contract price, unless so agreed, after breach on the part of the contractor. That which will make an owner liable on a quantum meruit, on a partial or incomplete performance on the part of the contractor, does not necessarily amount to a waiver of his right to recoup damages for the contractor's breach; and upon the whole he should certainly have such amount deducted from the contract price as will be equal to the difference between the value of the work agreed to be done, and that of the work done'. * * *."—Braswell v. Malone, 262 Ala. 323, 327–328, 78 So. 2d 631, 635.

This court in Walstrom v. Oliver-Watts Construction Co., 161 Ala. 608, 619, 50 So. 46, 50 said:

"* * * The authorities above cited are uniform in holding that an owner who has sustained injury by reason of a breach of the building contract on the part of the builder, may recover in a separate action against the builder, or if sued by the builder on a quantum meruit, that he may recoup or set off such damages as are the proximate result of the breach, the amount of which, as above stated, being the difference between the value of the work furnished or building constructed and the value of that contracted for, or the reasonable value of the extra work occasioned the owner in making the building conform to the contract stipulations. 6 Cyc. 113; Suth on Damages, §§ 709–711."

In regard to the case at bar it may be observed further that a distinction exists between a contract to construct a dwelling for the owner who plans to live therein and a contract to construct a commercial structure where the aesthetic taste of the owner is not so deeply involved. It seems to us that when an owner contracts to have a dwelling constructed he wants a particular structure, not just any structure that could be built for the same price. We, therefore, think that the trial court was correct in awarding damages equal to the amount required to reconstruct the dwelling so as to make it conform to the specifications, rather than adopting the difference in loan value on the dwelling as the measure of damages, as contended by appellant.

#### Subheading (4)

Appellant finally insists that the decree is based on illegal, irrelevant, and incompetent testimony in that "practically every question to appellee's witnesses was a leading question." In support of this position the appellant cites § 372(1), Title 7, Code of 1940, and Low v. Low, 255 Ala. 536, 52 So. 2d 218.

■ Low v. Low, supra, merely points out that under § 372(1), Title 7, Code of 1940, there is a presumption that where the trial court overruled an objection to illegal evidence such evidence was considered in arriving at the judgment and unless the remaining evidence is without conflict and sufficient to support the judgment, it will be reversed.

In Bessemer Theatres, Inc., v. City of Bessemer, 261 Ala. 632, 635, 75 So.2d 651, 654, this court said:

"* * * The rule is in substance that it is not necessary to make objection to the testimony which is irrelevant, immaterial and incompetent, or have a ruling upon that question, and if no objection is made and no ruling is had it will be presumed that the trial court considered only such evidence as was relevant, material and competent and on appeal this Court will so consider it. It is also provided that if specific objection is made and a ruling had thereon, that feature of the statute will not apply."

■ The result of this statute is to create a presumption in favor of the findings of the trial court. See Rudicell v. Rudicell, 262 Ala. 41, 43, 77 So.2d 339.

It should be observed that appellant is objecting to the form of the question whereby the testimony was offered rather than to the testimony itself.

Since there is in our judgment sufficient legal evidence upon which to base the decree, we find no merit in appellant's objection to the evidence.

■ Appellant further insists that no testimony as to the amount expended by appellees should be considered after proof that FHA had made its final inspection of the house involved in the contract and had accepted it. We have already stated that whether or not FHA had made its final inspection of the house and accepted it was irrelevant to the issue of whether or not the

house as constructed by Fox conformed to the plans and specifications.

We conclude that the decree of the court should be affirmed.

Affirmed.

LAWSON, MERRILL and COLEMAN, JJ., concur.