**ACE CONSTRUCTION COMPANY,**
Appellant,

v.

**W. H. NICHOLS & COMPANY, Inc.,**
Appellee.

No. 7932.

United States Court of Appeals
Tenth Circuit.

Nov. 30, 1965.

Herbert A. Marshall, Topeka, Kan. (Doral H. Hawks, E. Gene McKinney, Wayne E. Hundley, Allen Meyers, Topeka, Kan., on brief), for appellant.

Charles S. Fisher, Jr., Topeka, Kan. (O. B. Eidson, Philip H. Lewis, James W. Porter, William G. Haynes, Peter F. Caldwell, Roscoe E. Long, R. Austin Nothern, Brock R. Snyder, Topeka, Kan., on brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

MURRAH, Chief Judge.

Appellee, a subcontractor, sued and recovered a jury trial judgment against his prime contractor on the theory that the prime contractor made the performance of the subcontract "substantially impossible", thereby justifying abandonment and compensatory damages, including expenses.

The appellant, Ace Construction Company, contracted with the government through its Corps of Engineers for the relocation of a segment of a railroad in Kansas. It then subcontracted the laying of the rail structure to the appellee, a railroad builder, on a subgrade to be prepared by the appellant prime contractor. The subcontract incorporated by reference all the relevant provisions of the prime contract, the subcontractor agreeing to perform all the work covered by the subcontract "* * * in accordance with the terms and provisions of the contract * * * incuding all the general and special provisions, drawings and specifications * * *". The general contract pertinently provided that the contractor should designate the source of materials for the roadbed and furnish samples to the contracting officers and that "* * * all materials shall be approved prior to delivery to the site of the work * * * and sampled periodically during the work for compliance with the specification requirements. All tests will be made by or under the supervision of the government and at government expense. The select material (subballast) shall consist of crushed rock or gravel conforming to the A.R.E.A. standards and specifications requirements for quality and soundness, and shall meet the standards of the following gradations * * *".

The contractor designated the source of the materials. They were accepted by the contracting officers and put in place under the supervision, inspection and with the approval of the contracting officer. In due time the prime contractor called upon the subcontractor to commence the performance of his contract to lay the rail structure.

The subcontractor moved equipment to the site, ordered materials and supplies, but declined to proceed with the performance of the contract for the stated reason that the subgrade was impassable and would not support its hauling equipment for the "* * * distribution and placement of the metal materials and cross ties," thereby rendering impossible the performance of the contract in compliance with the specifications.

After conferences with the prime contractor and representatives of the Corps, pursuant to which the Corps was unwilling to make any design changes or permit distribution of ties and rails on the subgrade by "your present method", the subcontractor abandoned its contract and brought this suit. The prime contractor thereupon awarded the subcontract to a third party who completed it by the same

methods to be employed by the subcontractor. The project was ultimately accepted by the Corps and by the railroad as " * * * in accordance with the contract plans and specifications."

The case was submitted to the jury on the contention of the subcontractor to the effect that the prime contractor breached its obligation to provide a suitable roadbed upon which the rail structure could be laid in compliance with the plans and specifications of the prime contract, and it thereupon became impossible for the subcontractor to perform its contract, thus excusing performance.

The jury was told that "It is implied in all contracts for construction work that the principal contractor or other persons from whom the work is contracted to be done will do that work which necessarily precedes that covered by the subcontract and will have the place where the work is to be done in proper condition to permit the work subcontracted to be done in accordance with the plans and specifications agreed upon by the parties." Corbin puts it this way: "When a contract has been made for an agreed exchange of two performances, one of which is to be rendered first, the rendition of this one substantially in full is a constructive condition precedent to the duty of the other party to render his part of the exchange." Corbin on Contracts, Vol. 3A, § 700, p. 309. Following general contract law, we have said that each party owed the contract the duty of good faith performance and impliedly covenanted not to interfere with the rights of the other to the fruits of its bargain. See Ryder Truck Rental, Inc. v. Central Packing Co., 10 Cir., 341 F.2d 321.

Making application of the law to the facts in this case the jury was instructed that the prime contractor represented to the subcontractor that it would build or cause to be built and delivered to it a subgrade of the kind and quality required by the plans and specifications of the contract; that by calling upon the subcontractor to commence performance of the subcontract, it thereby impliedly represented that it had complied with the specifications of the contract and that the subcontractor was entitled to rely upon such representations.

The court was careful to tell the jury that the prime contractor was not obligated to the subcontractor to perform his obligation to "absolute perfection in every detail"; that substantial performance in good faith may be regarded as in full performance of the contract. The jury was further told, however, that it would not be substantial performance if it found from the evidence that the select material or subballast put in place on the subgrade failed to meet specifications and requirements of the prime contract to such an extent that the placing of the ties, rails and ballast by the subcontractor on the subgrade was made impractical because of extreme or unreasonable difficulty.

Finally, the jury was told that if it found and believed from a preponderance of the evidence that the roadbed tendered to the subcontractor did not comply with the specifications of the prime contract and performance of the subcontract was thereby made impossible as that term was used in the instructions, it should find for the subcontractor even though it may also find and believe from the evidence that the prime contractor's failure to comply with the specifications may have been caused in part by errors and omissions by the Corps of Engineers in testing and approving select material for use as subballast on the roadbed.

The prime contractor acknowledges its implied obligation to furnish its subcontractor a subgrade in conformity with the specifications of the prime contract. It also concedes record evidence to the effect that the select materials or subballast used on the subgrade did not conform to the A.R.E.A. specifications. It meets the issues, however, simply and directly by invoking the terms of the prime contract to the effect that all testing of materials used in performance of the contract was to be made by the contracting officer; that he was the arbiter of compliance with the specifications of the contract. From this he reasons that

acceptance of the materials by the contracting officer as in compliance with the contract was conclusive and unimpeachable evidence of substantial performance. In short, the prime contractor argues that it had a right to rely upon the contracting officer's tests, approval and acceptance of the materials, and acceptance by him is binding upon the subcontractor in the absence of fraud. No fraud is plead nor proved. The prime contractor moved for a directed verdict and then requested instructions, objecting to the instructions of the court insofar as they failed to conform with this theory.

 The fallacy of appellant's theory is that it mistakenly, we think, relies upon the general proposition that an agreement to perform a construction contract in accordance with the plans and specifications as approved by a designated person such as an engineer, architect or contracting officer makes and constitutes that person the final arbiter of substantial performance in accordance with the terms of the contract, and performance is not excused by unforeseen difficulties. See Kansas Turnpike Authority v. Abramson, 10 Cir., 275 F.2d 711; Neale Construction Co. v. Topeka Township Sewage Dist. No. 1, 178 Kan. 359, 285 P.2d 1086 and authorities cited. The point of distinction is that by agreeing to perform the subcontract in accordance with the plans and specifications of the prime contract as approved and accepted by the contracting officer, the subcontractor did not thereby agree to be bound by the contracting officer's decision with respect to matters or disputes arising between the contractor and the subcontractor which were of no concern to the government. Approval by the contracting officer did not conclusively discharge the prime contractor's legal duty to the subcontractor unless the parties so agreed inter sese. See Fox v. Webb, 268 Ala. 111, 105 So.2d 75, 67 A.L.R.2d 1007, Anno. p. 1017; and Cf. Woodruff v. Hough, 91 U.S. 596, 23 L.Ed. 332. The parties were free to contract among themselves concerning performance of

the contract according to specifications, and there is nothing in the prime contract from which it can be said that the subcontractor either expressly or impliedly agreed to be bound by the approval of the materials by the contracting officer. Acceptance by the contracting officer of the materials as in accordance with the plans and specifications of the contract is, to be sure, cogent evidence of substantial compliance, but it is not conclusive or unimpeachable.

We think the trial court correctly instructed the jury on the law of the case, and its verdict thereon as approved by the court is binding here.

Judgment is affirmed.