926 So.2d 348 (2005)
Jack SHEWMAKE
v.
Al DelGRECO and Lisa DelGreco.
2040016.
Court of Civil Appeals of Alabama.
October 21, 2005.
*349 Laurie Boston Sharp, Birmingham, for appellant.
R. Gordon Pate and Karen D. Farley of Pate, Lloyd & Cochrun, LLP, Birmingham, for appellees.
BRYAN, Judge.
The defendant Jack Shewmake appeals a judgment in favor of the plaintiffs Al DelGreco and Lisa DelGreco. We reverse the trial court's judgment and render a judgment in favor of the DelGrecos in the amount of $866.49.
On March 13, 1999, the DelGrecos entered into a written contract with Shewmake and Jim Kelly regarding the remodeling of the DelGrecos' house ("the contract"). The remodeling consisted of adding a playroom and a hobby room underneath an existing wooden deck, replacing the existing wooden deck with a concrete deck, adding a screened-in porch, and adding a third garage. In pertinent part, the contract stated:
"Job Description: Addition to existing house according to plans and specs provided by owner. Addition to be done in a timely and workmanlike manner. Exterior and interior to match existing structure as closely as possible.
"Walls, trim and ceiling of main structure to match existing. Flooring to be carpet with 28.00/sy allowance. Sheet rock walls, acoustic ceiling, driveway and walks to be extended as per owners' specifications. Paint colors to be selected by owners.
"Best effort has been made to give an accurate estimate for the costs of this job. Allowances have been provided as a guideline to help control costs.
"Any addition requirements by the Greystone ACC will be added to the estimated cost and paid by the owners. "[The DelGrecos] will be responsible for all labor and materials performed and/or delivered to this site. Any work performed by [Shewmake and Kelly] will be paid as sub-contract labor. (such as clean up, trim work, painting, punch list, etc.)
"[Shewmake and Kelly] to work on a fee of [$]35,000.00 for overseeing construction, obtaining material, scheduling subcontractors and quality control.
"Subcontractors must be paid on Friday of each week by 3:30 p.m.
"Supplier[s] to be paid before the 10th of each month and bills will be discounted if applicable. If special order items are necessary, deposits or advance payment may be required.
". . . .
"Fee Schedule:

*350 "[$]3,000.00 due upon signing of contract
"[$]6,000.00 due 1st of each month beginning April 1 for five months
"[$]2,000.00 due along with remaining balance of monthly installments upon final inspection."
The estimated costs and allowances for the labor and materials totaled $114,000.
The remodeling of the DelGrecos' house began in April 1999. A substantial amount of work had been completed by late July 1999. In late July or early August 1999, a subcontractor, Concrete Designs and Coatings, LLC ("Concrete Designs"), poured the new concrete deck in forms installed by Shewmake and Kelly for a contract price of $5,626. However, after the new concrete deck was poured, the DelGrecos noticed that it allowed rain to leak into the new playroom and hobby room underneath it. They also noticed several other less significant problems with the remodeling work that needed to be corrected. The DelGrecos complained to Shewmake and Kelly regarding all of these problems. Shewmake and Kelly attempted to correct the problems; however, they had not yet successfully corrected the leak in the concrete deck when Mr. DelGreco told Shewmake in November 1999 that the DelGrecos would not pay Shewmake and Kelly any further money until Shewmake and Kelly had corrected the leak in the concrete deck. After this conversation, Shewmake and Kelly did not perform any further work on the DelGrecos' house.
When Shewmake and Kelly ceased working on the DelGrecos' house in November 1999, the DelGrecos employed an architect to determine what needed to be done to correct the defects in the work completed by Shewmake and Kelly. The DelGrecos then employed a substitute contractor to correct the leak in the concrete deck and to complete the remodeling project. In order to eliminate the leaking in the concrete deck, the substitute contractor demolished the concrete deck installed by Shewmake and Kelly and installed a new concrete deck in its place.
On March 6, 2000, the DelGrecos sued Shewmake, Kelly, and Concrete Designs, alleging breach of contract, negligence, fraud, misrepresentation, the tort of outrage, and breach of warranty. The defendants answered the complaint. Shewmake and Kelly asserted the affirmative defense of set-off. In addition, Concrete Designs asserted a cross-claim against Shewmake and Kelly to recover the $5,626 Shewmake and Kelly had agreed to pay Concrete Designs for pouring the initial concrete deck. Before trial, the DelGrecos settled their claims against Concrete Designs on a pro tanto basis.
At a bench trial on October 30, 2003, the trial court received evidence ore tenus regarding the DelGrecos' claims against Shewmake and Kelly and regarding Concrete Designs' cross-claim against Shewmake and Kelly. Kelly did not appear for trial.
The evidence at trial established the following facts. The DelGrecos paid Shewmake and Kelly a total of $96,497.78. This total consisted of $21,000 in fees and $75,497.78 for labor and materials. The $75,497.78 for labor and materials included amounts for extras the DelGrecos requested after the written contract had been executed. The DelGrecos paid the architect $1,496.13 for inspecting the work performed by Shewmake and Kelly. The DelGrecos paid the substitute contractor $18,470.36 to demolish the concrete deck Shewmake and Kelly had installed and to install a new one. In addition, the DelGrecos paid the substitute contractor approximately $57,000 to complete the remodeling of their house.
*351 Shewmake paid $14,800 for labor and materials used in the remodeling work he and Kelly completed for which the DelGrecos did not reimburse him. In addition, Shewmake owes a supplier $4,300 for materials used in the remodeling work he and Kelly completed for which the DelGrecos did not reimburse him. The DelGrecos did not pay Shewmake and Kelly $14,000 of the $35,000 contractors' fee contemplated by the contract. Shewmake estimated that the labor and materials necessary to complete the work he had agreed to perform would have cost approximately $10,000 to $12,000.
At trial, the DelGrecos asked the trial court to award them as damages the $96,497.78 they had paid Shewmake and Kelly, the $1,496.13 they had paid the architect, and the $18,470.36 they had paid the substitute contractor to replace the concrete deck installed by Shewmake and Kelly. The DelGrecos expressly waived any claim to recovery of the approximately $57,000 they had paid the substitute contractor to complete the remodeling of their house.
On November 3, 2003, the trial court entered a final judgment awarding the DelGrecos $119,966.49 on their claims against Shewmake and Kelly, jointly and severally, and awarding Concrete Designs $5,626 plus $1,436.22 in prejudgment interest on its cross-claim against Shewmake and Kelly, jointly and severally.[1]
On December 2, 2003, pursuant to Rule 59, Ala. R. Civ. P., Shewmake moved the trial court to alter, amend, or vacate the judgment, or to order a remittitur, or to order a new trial. In support of his Rule 59 motion, Shewmake argued that the trial court had erred because, Shewmake said, the trial court had not used the correct measure of damages in determining how much the DelGrecos were entitled to recover. Specifically, Shewmake argued that the correct measure of damages was the difference between the market value of the remodeling work completed by Shewmake and Kelly and the market value of the remodeling work as warranted. Shewmake cited McLendon Pools, Inc. v. Bush, 414 So.2d 92 (Ala.Civ.App.1982), and Alabama Pool & Construction Co. v. Rickard, 418 So.2d 149 (Ala.Civ.App.1982), in support of this argument. Shewmake also argued that the trial court erred in awarding the DelGrecos the $96,497.78 they had paid Shewmake and Kelly on the ground that this award unjustly enriched the DelGrecos by compensating them for work that Shewmake and Kelly had performed in a workmanlike manner and that added value to the DelGrecos' house.
On February 11, 2004, the trial court entered and signed the following order on the case action summary:
"Pursuant to Defendant Shewmake's Motion to Alter, Amend or Vacate the Judgment or[,] in the Alternative[,] for a New Trial[,] the amount awarded to Plaintiffs in the Final Judgment in this cause dated November 3, 2003[,] is amended from $119,966.49 to *352 $116,364.27.[[2]] By agreement[,] this Court reserves ruling on the merits of said motion which shall be done on or before April 1, 2004."
On April 1, 2004, the trial court entered and signed the following order on the case action summary:
"The Court finds that the McLendon & Alabama Pool cases [are] not applicable to the calculation of damages in this case. [Shewmake's] Motion to Alter, Amend or Vacate is DENIED."
Shewmake timely appealed to the supreme court on May 12, 2004, and, pursuant to § 12-2-7(6), Ala.Code 1975, the supreme court transferred the appeal to this court on October 5, 2004.[3]
On appeal, Shewmake argues that the trial court erred in applying the wrong measure of damages.[4] Citing McLendon Pools and Alabama Pool, he argues that the correct measure of damages for breach of the construction contract in the case now before us is the diminished-value standard, i.e., the difference between the market value of the remodeling work as completed by Shewmake and Kelly and the market value of the remodeling work as warranted. Shewmake further argues that, because the DelGrecos did not introduce any evidence of the market value of the remodeling work as completed by Shewmake and Kelly or the market value of the remodeling work as warranted, the trial court should not have awarded the DelGrecos any damages.
In McLendon Pools, McLendon Pools contracted to construct a pool at Bush's home. Problems developed with the pool as soon as it was completed. Bush then sued McLendon Pools, alleging breach of contract and breach of warranty. After the trial court entered a judgment on a jury verdict awarding Bush $10,000, McLendon Pools appealed to this court. On appeal, McLendon Pools contended, among other things, that the amount of damages awarded by the jury was erroneous. This court held:
"The general measure of damages in a case of this type is the difference between the market value of the pool as completed and the market value of the pool as warranted. Converse Bridge Co. v. Geneva County, 168 Ala. 432, 53 So. 196 (1909); Fleming v. Lunsford, 163 Ala. 540, 50 So. 921 (1909). No evidence of such measure was presented. The only evidence as to amount of damages was an estimate of $1,600 to replace the cracked concrete deck around the pool and $698 expended for a larger filter stated to be necessary to properly filter the pool.
". . . .
"Unless [Bush] remits all [damages] in excess of $2,298 by filing a remittitur with this court within ten days following *353 the finality of this opinion, the judgment of the lower court will be reversed and the cause remanded for new trial."
414 So.2d at 94-95.
In Alabama Pool, Alabama Pool contracted to construct a pool at Rickard's home for $8,950. Alabama Pool completed enough work on the pool to enable Rickard and his family to use it for swimming. However, there were wrinkles in the pool liner, discolored concrete walkways, chipped and rough concrete decking, a dented ladder, and misaligned coping. In addition, there was evidence that the installation of the pool's electrical system did not comply with applicable city ordinances. Rickard refused to pay Alabama Pool $2,950 of the contract price.
Alabama Pool sued Rickard and alleged that Rickard had breached the contract by failing to pay Alabama Pool $2,950 of the contract price. Rickard counterclaimed and alleged that Alabama Pool breached the contract by failing to construct the pool in a workmanlike manner and in conformity with the applicable city ordinances and that Alabama Pool had breached express and implied warranties of fitness for a particular purpose. A jury returned a verdict against Alabama Pool on its claim and in favor of Rickard on his counterclaim. The jury awarded Rickard $3,000 as damages. Alabama Pool moved the trial court for a new trial on the ground that the jury's verdict was unsupported by the evidence, and the trial court denied the motion. Alabama Pool then appealed to this court.
On appeal, Alabama Pool contended that the evidence did not support the award of $3,000 on Rickard's counterclaim. Agreeing, this court reversed the judgment in favor of Rickard and explained:
"The sole issue presented for review is whether there was sufficient evidence to support the jury's verdict awarding [Rickard] $3,000 on his counterclaim. Though ... there is ample evidence that [Alabama Pool] breached the pool construction contract, a careful review of the record has failed to reveal any evidence that would warrant a finding that [Rickard] had suffered any compensable damage due to the breach. Because there is no evidence that [Rickard] was damaged, as damages are determined under Alabama law, this court must reverse the verdict awarding damages. Specifically, the trial court erred in not granting [Alabama Pool's] motion for a new trial due to a lack of evidence to support the jury's verdict.
"As this court is aware, . . . many jurisdictions would apply a `cost of repairs' measure of damages in cases involving defective installation or construction of swimming pools. See generally 13 Am.Jur.2d, Building and Construction Contracts §§ 76-86 (1964). This court, in accordance with previous supreme court cases, has recently held, however, that the `diminished value' measure of damages is applicable to cases involving breach of a pool construction contract. The `diminished value' measure of damages as stated by Presiding Judge Wright in McLendon Pools, Inc. v. Bush, 414 So.2d 92 (Ala.Civ.App.1982), is `the difference between the market value of the pool as completed and the market value of the pool as warranted. Converse Bridge Co. v. Geneva County, 168 Ala. 432, 53 So. 196 (1909); Fleming v. Lunsford, 163 Ala. 540, 50 So. 921 (1909).' In a case such as this, cost of repairs can properly be admitted into evidence and considered by the jury, but only as an aid in determining the diminished value.

*354 "Upon reflection, it becomes apparent from the foregoing statement of the diminished value rule that in order to receive compensation under that rule, [Rickard], in this case, would have had to prove that he paid more for the pool than the pool was worth as it was completed. This [Rickard] has failed to do.
"A review of the record reveals that only one witness was able to testify as to the pool's value as completed. This witness, who was an expert testifying for [Rickard], testified that the pool had a value of from $6,000 to $6,500 as completed. [Rickard] testified, in response to a question from [Alabama Pool's] counsel, that he had no estimate of the value of the pool as completed.
"Viewing the evidence most favorably to the prevailing party, as this court is required to do (Cooper v. Peturis, 384 So.2d 1087 (Ala.1980)), we must conclude that the pool had a value of $6,000 in its completed state. Since [Rickard] had paid but $6,000 for the pool, he had paid no more than the pool was worth as completed. Stated differently, [Rickard] paid for a $6,000 pool and he received a $6,000 pool. Consequently, in this instance under these facts, [Rickard] has failed to prove that he was damaged by [Alabama Pool's] breach."
418 So.2d at 151.
The DelGrecos argue that the diminished-value measure of damages applied by this court in McLendon Pools and Alabama Pool is not applicable in the case now before us because, they say, McLendon Pools and Alabama Pool "involved completed work performed regarding a pool, not incomplete work which was to be performed on a house." (DelGrecos' brief at p. 8.)
In Fox v. Webb, 268 Ala. 111, 105 So.2d 75 (1958), Fox contracted to build the Webbs a house in accordance with their plans and specifications for a contract price of $8,750. As Fox performed the work, the Webbs became dissatisfied with the quality of Fox's work and with its nonconformity with the plans and specifications. Fox stopped working on the house before he had completed it. When Fox stopped working, the Webbs, who had previously paid him $6,171.50, refused to pay him the remaining $2,578.50 of the contract price. Fox then sued the Webbs to recover the balance of the contract price. The Webbs counterclaimed to recover the amount necessary to complete the house in accordance with the plans and specifications. Following a bench trial, the trial court awarded Fox the $2,578.50 balance of the contract price plus $147.90 for extras and awarded the Webbs $3,798.54 on their counterclaim. After setting off Fox's $2,726.40 award against the Webbs' $3,798.54 award, the trial court ordered Fox to pay the Webbs the net difference of $1,072.14. Appealing to the supreme court, Fox contended, among other things, that the trial court had erred in awarding the Webbs the amount necessary to complete the house in accordance with the plans and specifications. Rejecting this argument, the supreme court stated:
"The court found that the work had not been completed by the contractor in accordance with the terms and conditions of the contract. The evidence was heard orally before the court. Under these circumstances, the findings of the trial court have a presumption of correctness.
"The court found that the amount which was necessary to complete the building in accordance with the terms and conditions of the contract was $3,798.54. It seems to us that the record substantiates such a conclusion. We are not willing to say that the findings of the court were palpably wrong.

*355 "....
"This court in Walstrom v. Oliver-Watts Construction Co., 161 Ala. 608, 619, 50 So. 46, 50 [(1909),] said:
`... The authorities above cited are uniform in holding that an owner who has sustained injury by reason of a breach of the building contract on the part of the builder, may recover in a separate action against the builder, or if sued by the builder on a quantum meruit, that he may recoup or set off such damages as are the proximate result of the breach, the amount of which, as above stated, being the difference between the value of the work furnished or building constructed and the value of that contracted for, or the reasonable value of the extra work occasioned the owner in making the building conform to the contract stipulations. 6 Cyc. 113; Suth on Damages, §§ 709-711.'"
268 Ala. at 118-19, 105 So.2d at 82 (emphasis added; some citations omitted).
We conclude that the holding in Fox v. Webb governs the case now before us. Under the holding in Fox v. Webb, the $1,496.13 the DelGrecos paid the architect to determine what needed to done to correct the defects in Shewmake and Kelly's work and the $18,470.36 the DelGrecos paid the substitute contractor to replace the concrete deck installed by Shewmake and Kelly were proper elements of the DelGrecos' damages.[5] However, the $96,497.78 the DelGrecos had paid Shewmake and Kelly was not a proper element of the DelGrecos' damages. The trial court's awarding the DelGrecos the $96,497.78 they had paid Shewmake and Kelly unjustly enriched the DelGrecos. In addition, the evidence established that Shewmake and Kelly had used $19,100 in labor and materials in performing remodeling work on the DelGrecos home for which the DelGrecos had not reimbursed Shewmake and Kelly. Accordingly, the $19,966.49 in damages the DelGrecos were entitled to claim for the work necessary to correct the defects in Shewmake and Kelly's work is subject to a set-off equal to the $19,100 the DelGrecos had not paid Shewmake and Kelly. Consequently, the DelGrecos are entitled to a net recovery of $866.49.

Conclusion
We reverse the judgment of the trial court, and we render a judgment in favor of the DelGrecos in the amount of $866.49.
REVERSED AND JUDGMENT RENDERED.
CRAWLEY, P.J., and MURDOCK, J., concur.
THOMPSON, J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.
THOMPSON, Judge, concurring in part and dissenting in part.
I agree that the trial court erred in determining the proper measure of damages in this matter. However, I would not render a judgment in this matter. It is for the trier of fact to determine the damages *356 to which the DelGrecos are entitled and the credits that Shewmake should receive. I would, therefore, remand the cause to the trial court for it to decide, in compliance with the law set forth in the main opinion, the proper amount of damages based on the evidence presented at trial.
PITTMAN, J., concurs.
NOTES
[1] The amounts the DelGrecos requested as damages, i.e., the $96,497.78 they had paid Shewmake and Kelly, the $1,496.13 they had paid the architect, and the $18,470.36 they had paid the substitute contractor to replace the concrete deck installed by Shewmake and Kelly, totaled $116,464.27; however, Mr. DelGreco inadvertently testified that they totaled $119,966.49.

Although the judgment did not identify the legal theory upon which the trial court found Shewmake and Kelly liable, the parties have treated the judgment as though it found Shewmake and Kelly liable for breach of contract only.
[2] The amounts the DelGrecos requested as damages actually totaled $116,464.27, $100 more than this amended award. See note 1.
[3] Kelly did not file a notice of appeal and, therefore, is not a party to this appeal.
[4] On appeal, Shewmake has neither framed an issue nor presented argument regarding whether the trial court erred in finding in favor of Concrete Designs on its cross-claim. Therefore, Shewmake has abandoned that issue. Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) ("`When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89 (Ala.1982).' Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). `An appeals court will consider only those issue properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief. Ex parte Riley, 464 So.2d 92 (Ala.1985).' Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988).").
[5] Although Mr. DelGreco testified that there were other defects in Shewmake and Kelly's work that were less significant than the leak in the concrete deck, the DelGrecos did not introduce any evidence of the cost of repairing those defects.

Had they not expressly waived any claim to the approximately $57,000 they paid the substitute contractor to complete the remodeling, that completion cost would also be a proper element of damages. However, that completion cost would have been subject to a set-off equal to the amount the DelGrecos would have been obligated to pay Shewmake and Kelly if they had completed the remodeling.