ÁNGEL DANIEL RIVERA ET AL., Plaintiffs and Appellees, *v.* CARIBBEAN HOME CONSTRUCTION CORPORATION, Defendant and Appellant.

No. R-66-303.     Decided September 28, 1971.

*Carlos A. Todd* and *Octavio Jiménez* for appellant. *Carmelo Ávila Medina* and *Roberto Ávila Rivera* for appellees.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This appeal comprises several consolidated actions for damages brought by eight plaintiffs, all of them residents in Ponce de León Development in Guaynabo. The evidence is common to all of them and they were heard jointly in the trial court. Defendant is the constructor of the aforementioned development. The complaints are grounded on material

and moral damages sustained by plaintiffs, by reason that, on June 5, 1964, their houses were inundated with water and mud as a result of construction defects of the development, specifically, in the street where plaintiffs live.

The trial court sustained the complaint as to five of the causes of action; it dismissed it as to two; and inadvertently, it failed to dispose of one. The court granted damages to four plaintiff couples in the amount of $6,000 to each one and $3,300 to another, amounting to $27,300. It also granted $2,500 for attorney's fees. Defendant has constructed eight developments in the metropolitan area of Puerto Rico, which comprise "about six or seven thousand dwellings" according to the testimony of its Head Engineer, José L. del Campillo.

Defendant-appellant assigns four errors. The first error assigns that the trial court erred in finding defendant liable for the damages caused, when—it argues—the drawings of said development were approved by the Puerto Rico Planning Board and by the Federal Housing Administration, and by other public offices, such as the Aqueduct Authority and the Water Resources Authority.

In the second error it argues that the damages cannot be attributed to defendant, but rather to a case of force majeure consisting in heavy rainfall which fell on said place during the days of June 4 and 5, 1964. The third assignment assigns that the trial court erred in failing to accept the defense that the streets and the pluvial sewerage system of Ponce de León Development are the responsibility of the Municipality of Guaynabo. In the fourth assignment the amounts granted are challenged.

■ Before discussing the errors assigned, it is necessary to explain that in Spanish and in civil law the barbarism *"acto de Dios"* ("Act of God") should not be used when there is available in civil law the phrase *fuerza mayor*, which is also correct in Spanish, expression which comes from the Latin *vis major*. *Vis* means force, in Latin. The equivalent French

expression is "force majeure", and the Italian is "forza maggiore." Black, in his Law Dictionary, 4th ed., after defining the English expression "act of God" as an act occasioned exclusively by violence of nature without the interference of any human agency, says that in the civil law it is called *vis major* and defines this expression in the same manner as "act of God."

■ However, there exists the generalized confusion in the use of the terms fortuitous event and vis major. As it is well-known, civil liability may be incurred by breach of contract and by violation of a right not dependent on a contract, the latter being also called Aquilian fault because it was sanctioned in Rome by the Lex Aquilia. But since in order that fault may be incurred—in the broad sense of the word—there must exist intent to cause damage (wrongful acts) or at least negligence (negligent acts), when the occurrence causing the nonperformance of the obligation or the damage, as the case may be, cannot be foreseen, or which having been foreseen, is inevitable, as a general rule liability is not incurred. We say as a general rule because the law of damages is not so simple that it might be restrained to some brief rules, although the latter are, in principle, correct. For example, the basic causal relationship fault-damage-liability admits exceptions, as is the case of no-fault liability, also called absolute liability and objective liability.[1] Furthermore, as we shall see, not every inevitable occurrence, but foreseen or which may be foreseen, necessarily exempts from liability.

■ Returning to the thought which at this moment we want to set forth, said occurrence which exempts from liability—by reason that it cannot be foreseen, or which having been foreseen, cannot be prevented—is called fortuitous event or vis major. This broad concept, which, because it is based

---

[1] In relation to no-fault liability, see 1-2 Castán, *Derecho Civil Español, Común y Foral* 612–619 (10th ed. 1963). In the 9th ed., in the same tome and volume, pp. 484–497.

on equity, may operate in the entire field of the law,[2] has as its most significant application that of exonerating from liability in the performance of the obligations. In this sense it may be defined as that occurrence not chargeable to the debtor which prevents the performance of the obligation. Our Civil Code, like the Spanish Code, gathers said concept—fortuitous event or vis major—in dealing with the nature and effect of obligations. In that context its § 1058 (31 L.P.R.A. § 3022) provides that with the exception of the cases expressly mentioned in the law or in the obligation, "No one shall be liable for events which could not be foreseen, or which having been foreseen, were inevitable."

From the ancient as well as in relation to the modern codes, it has been discussed whether the terms fortuitous event and vis major are synonymous, or whether they have different meanings. The treatment of the matter by the codes is not uniform.[3] Among the commentators, the lack of unanimity in opinion is more noticeable. The majority of them see in the phrases "fortuitous event" and "vis major", synonymous terms. Thus, for example, Valverde understands it.[4] On his part, Manresa is of the opinion that within the general concept of fortuitous event, properly speaking, the latter and that of vis major are comprised. He also believes that the one as well as the other may be ordinary or extraordinary.[5] Castán points out that in the Spanish Law the pre-

---

[2] In relation to rectorial function of equity in the law, see Castán, *La Formulación Judicial del Derecho*, chapters II and III, 2d ed., Reus, Madrid (1954) and Allen, *Law in the Making*, chapter V, particularly at pp. 394–399, 7th ed. (1964). Also, *Silva* v. *Industrial Commission*, 91 P.R.R. 865, 872, 878 (1965) and *Don Quixote Hotel* v. *Superior Court, ante*, p. 19.

[3] For a study of comparative jurisprudence on this matter and for an ample discussion of the subject matter, in itself, see the enlightening work of Coustasse and Iturra, *El Caso Fortuito Ante el Derecho Civil, Editorial Jurídica de Chile*, Santiago de Chile (1958).

[4] 3 *Tratado de Derecho Civil Español* 95 (4th ed. 1937).

[5] 8-1 *Comentarios al Código Civil Español* 205 (5th ed. 1950).

vailing opinion rejects the distinction between these two terms, but some of them, he says, believe that sometimes a distinction is necessary in view of the sections of the Code. He mentions, as examples, §§ 1784 and 1905 of the Spanish Civil Code.[6] The first one exonerates from liability the inn and hostelry keepers for the loss of the goods introduced by the travelers in the inns and hostelries when the same are caused by vis major. The second, in part, exonerates from liability the possessor of an animal for the damages it may cause if the damage arises from force majeure. The equivalent sections of the Puerto Rican Code are identical with the Spanish sections. See footnote 6. Except for these particular cases which he mentions, Castán seems to agree with the majority of the authors in that the distinction between fortuitous event and vis major, in his own words, "may be considered irrelevant, since both phenomena produce the exoneration of the debtor."[7] Badenes Gasset, after setting forth what we have verified in our study, that the authors who distinguish the fortuitous event from the vis major do not agree as to the differential opinion, is of the opinion that such distinction lacks practical interest (since the law acknowledges or assigns to both of them identical consequence: exoneration of the debtor).[8]

■ Among the commentators who have exercised the perilous function of defining, there are contradictions, as we have already said. Some believe that the fortuitous event includes the natural phenomena as lightning, earthquakes, floods, and storms, and that vis major comprises personal acts of a third person. Other writers understand it contrariwise; that is, that vis major comprises natural phenomena

---

[6] Equivalent to §§ 1684 and 1805 of Puerto Rico, 31 L.P.R.A. §§ 4694 and 5144.

[7] 3 Castán, *Derecho Civil Español, Común y Foral* 180, 10th ed. (1967).

[8] *El Riesgo Imprevisible* 103, Bosch, Barcelona (1946).

and that the fortuitous event comprises the action of a third person, for which action the debtor is not liable. And, as we saw in the previous citation of Manresa, the latter is. of the opinion that the fortuitous event comprises that of vis major.

In the year 1920, this Court, in *Vidal & Co.* v. *American Railroad Co.*, 28 P.R.R. 190, 195 (1920), after using both terms as synonyms in stating that "although a fire may be considered *a fortuitous event or vis major*, yet all fires have not *that character*, but only those which could not have been foreseen or prevented," (italics ours), sought to distinguish between vis major and fortuitous event and stated the following:

". . . *Vis major is an occurrence which could not have been foreseen or prevented,* as lightning, hailstorm, flood, hurricane, invasion by enemies, assault by robbers. . . . And *a fortuitous event is an unexpected accident or vis major* which could not have been foreseen or prevented . . . . Examples of these are floods, torrents, shipwrecks, fires, lightning, violence, insurrections, destruction of buildings by some unforeseen misfortune, and other similar happenings." (Italics ours.) (Citations omitted.)

We must admit that the difference between both terms was not very clearly established there.

The aforecited authors, Coustasse and Iturra (see footnote 3), in commenting on the distinction between the fortuitous event and vis major, point out that the Spanish case law has fully identified the fortuitous event with vis major and they cite the judgment of November 10, 1924, in which the Supreme Court of Spain affirms that the *fortuitous event* is, in the juridic order, that unexpected occurrence or *vis major* which cannot be foreseen, or that, even if it has been foreseen, cannot be prevented in its effects. Said authors conclude that "Actually, the discussion on this particular only

constitutes a controversy of scholastic nature, without any relation whatsoever to the juridic reality."[9]

In relation to a series of distinctions sought to be established, Giorgi comments that "they lack scientific accuracy and practical significance."[10] In Puerto Rico, Professor Guaroa Velázquez has written: "Fault or negligence is opposite to fortuitous event or vis major—distinction which, it is proper to say, barely has any practical interest, since to both notions the law assigns identical effects."[11]

Castán, in discussing the juridical transgressions and its consequences in the civil ambit, mentions the fortuitous event among the presumptions from which the obligation to pay indemnity does not arise, and states:

"Fortuitous event (casus) is every non-faulty occurrence. Our Code considers it as an occurrence which cannot be foreseen, or which even though foreseen, is inevitable (§ 1.105).

"Not only a natural occurrence is a fortuitous event, but also personal acts may be considered fortuitous events with respect to the agent or to a third person whenever neither the former nor the latter is liable for any fault whatsoever."[12]

Puig Brutau, in our opinion, with very good sense, writes:

"Actually, more than the speculation about the differences between fortuitous event and vis major, whatever such phenomena are by themselves, which is a rather unreal and arbitrary task, attention should be given to the only matter which at law has raison d'être: to the difference in degree of force with which the liability of the obligor should be imposed and maintained, according to the standards of juridical policy."[13]

---

[9] Coustasse and Iturra, *op. cit.* at p. 69.

[10] 2 *Teoría de las Obligaciones en el Derecho Moderno* 34 *et seq.*, cited by Coustasse and Iturra, 70.

[11] G. Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* 150, Equity Publishing Corp. (1964).

[12] 1-2 *op. cit.* at p. 618, 10th ed. (1963.)

[13] 1-2 *Fundamentos de Derecho Civil* 444, Bosch, Barcelona (1959).

Since it is not necessary, we are not going to take sides now on this "scholastic," "unreal," and "arbitrary" discussion. To the effect of the second error assigned by appellant, we are going to understand that it maintains that it is exempt from liability because this is a *fortuitous event or of vis major*. This covers all the possible tones of both expressions.

█ As we indicated before, the first assignment of error is to the effect that the drawings of Ponce de León Development were approved by the competent public offices and that this exculpates defendant-appellant from liability. He is not right. In *Santaella* v. *Licari*, 83 P.R.R. 855 (1961), we considered an identical contention—that the Bureau of Permits had approved the plans—and we said there, at p. 866:

". . . The approval by the Bureau of Permits means that the drawings approved comply with the *minimum* requirements of the law (and the regulation made under the authority of law), but in no way may such an approval absolve defendant from civil liability." (Italics ours.)

It is easy to understand why this is so. The public authority, which must watch over the general security and welfare, must demand certain minimum requirements from the constructors since, otherwise, it is conceivable that there be persons who would intend to build, and would build, houses and housing projects without fulfilling such requirements, as it actually occurred before the basic principles of urbanizing and planning were incorporated into our code of laws. But those minimum requirements demanded by the state and federal authorities are only that: minimum requirements, and they do not constitute a guarantee of the work nor do they grant immunity to the constructors, as we indicated in *Santaella* v. *Licari*, *supra*. Identical decisions have been rendered in other jurisdictions. *Girard* v. *Fine*, 85 N.Y.S.2d 418, 419 (1948); *Montgomery* v. *Kimbrough Homes*, 59 So.2d 273, 276 (1952); *Fox* v. *Webb*, 105 So.2d 75, 80 (1958).

We shall discuss jointly the second and third assignments of error. As to the second assignment, defendant's position is that a natural occurrence not attributable to it—heavy rainfall which produced an inundation—caused the damages and that, consequently, it has not incurred civil liability, since it cannot be charged with fault or negligence.

It is necessary to consider the facts—indispensable task for deciding—in order to see whether or not said natural occurrence, heavy rainfall and its consequences, were foreseeable at the place where the Ponce de León Development was constructed, and at the place where plaintiffs' houses were constructed. That and the original construction of the pluvial sewerage in that place shall afford an answer to the question of whether or not defendant may be charged with fault or negligence.

The facts, in short, are the following. Location of the development: Plaintiffs' houses are situated on Street No. 20 of Ponce de León Development. Said development is in the jurisdiction of Guaynabo. Guaynabo, located near and to the southeast of Bayamón, near and to the southwest of Río Piedras, and to the north of Aguas Buenas is, as we shall see, located in one of the areas where the rainfall is most abundant in Puerto Rico. Hereinafter we shall come back to this matter of the rainfall.

Topography of the land: The evidence showed that the land where Ponce de León Development was constructed, was never flooded before it was "developed" and "laid out" by the constructors. The rain water had its natural drainage, especially via Quebrada Dos Frailes. When they "laid out" the land with the engines, they leveled the high places and filled the low places. This altered the natural drainage of the land.

Street No. 20: Street No. 20 is only 300 meters long; it is the lowest site of Ponce de León and Muñoz Rivera Developments, which are adjacent to each other and both were constructed by appellant; and said Street No. 20, being the

lowest part of the two aforementioned developments, receives or may receive pluvial water from both developments, especially if it rains heavily. After considering the physical situation of the land before and after it was developed and that of Street No. 20, we shall examine the matter in relation to the rainfall in that area.

Incidence of rainfall in that place: The evidence concerning rainfall was as reliable as possible. Calvesbert, a climatologist of the Weather Bureau, who was presented by both parties, offered his testimony. The facts occurred on June 5, 1964. There is no Weather Bureau station in Guaynabo, but for the purpose of the case it is just the same, since there is one in Monacillos, at a distance of about a mile and a half north of Ponce de León Development. There is another one in Cataño and another at the airport in Isla Verde. There is no doubt that it rained heavily in Guaynabo and in Río Piedras on the day of the facts. "More than normally", the expert witness testified. From 8 a.m. of June 5, 1964 to 8 a.m. of June 6, there fell 2.41 inches of rainfall in Río Piedras. On June 4 and 5 there fell 4.00 inches in Monacillos. Is that amount of rainfall *in that area* unforeseen, or unusual, or extraordinary? It is not; and this is controlling in deciding whether the constructors incurred fault or negligence, as we shall explain hereinafter. Let us see the incidence of rainfall in that place. On another occasion from 8 a.m. of May 16, 1965 to 8 a.m. of May 17, there fell in Río Piedras 4.23 inches of rainfall. On May 8 of that same year there fell 2.66 inches. From July 1 to July 2 of the same year, there fell 3.22 inches.

From the previous evidence offered by the climatologist, it is clearly inferred that in that area heavy rainfall and "more than normally" are not unforeseen nor unusual, but rather on the contrary, they are foreseeable and are to be expected with relative frequency. For which reason said rainfall in that place does not have the nature of fortuitous event or vis major. This is not the heavy rainfall occurring one or two

or three times in a generation. On the contrary, in that place they occur rather frequently. In fact, they occurred twice in a single month: Street No. 20 was inundated on June 5 and 14, 1964. But once the constructors, after the second inundation, corrected the pluvial sewerage of said street by opening several additional sewer inlets on the surface of the street, the same was not inundated again. The foregoing shows that there heavy rainfall is foreseeable and the inundation was avoidable. There also appears from the record that in Garden Hills, where inundations also occurred, after the same constructors installed a larger pipe for the drainage no more inundations have occurred.

As it is well stated by Coustasse and Iturra, in view of the natural events, their unforeseeability is not absolute, but rather relative, and it varies in each case according to the usualness and unusualness of the occurrence. That, and the attitude which the responsible agent may have in view thereof, that is, the prudence and diligence or the absence thereof, which in view of the possibility that they may occur are shown by the one having civil liability, are elements to be considered before charging liability or exempting therefrom. The constructor does not know whether exactly within one year it is going to rain, or whether the wind is going to blow, or whether an earthquake is going to occur. That, he cannot foresee. But he does know that those phenomena occur with relative frequency and it is his duty when constructing to take the measures advised by prudence and science to guard against disaster and ruin. Of course, that is understood within reason. There are natural phenomena so vast and so strong whose terrible effects the human science cannot prevent, but reason and the very facts show that the case at bar is not one of those.

The aforementioned authors write:

"What forms the fortuitous event is not the fact in itself, but rather the manner in which it appears. Let us take the

example of an inundation: the latter having occurred in Santiago de Chile constitutes an unusual, unaccustomed, unexpected, in short, an unforeseeable event, since such event does not occur in said region, not even irregularly. On the other hand, the inundation occurring in certain regions of China, is a frequent or ordinary occurrence and, therefore, foreseeable. Consequently, 'inundation', the unexpected event, is a fortuitous event in Chile, while it is not in China, and the manner in which the event appears imparts its character to the latter. . . .

"The qualification of fortuitous given to an event under particular circumstances is not absolute, since, if the circumstances change, it may happen that the same occurrence may not have then the necessary requirements as to apply to it said qualification, and vice versa. Actually, 'it may very well happen that a particular kind of accident may partake, under certain circumstances, of the character of fortuitous and not under others, but, it is necessary that the factual circumstances change. Fire is a fortuitous event, if it is dependent on the fall of an aerostatic inflamed balloon, if it originates in the contiguous house or from the fire impelled by the wind. It is not fortuitous if it is the result of imprudence in turning on the lights or fuel; when it is so, it is fault, whatever the nature of the obligatory relationship.' "[14]

■■ Thus, then, it may be concluded that natural phenomena do not always exempt from liability on the pretext of being fortuitous event or vis major, since in order to qualify them as exempting from liability, or not, it is necessary to consider the other attendant circumstances in each case, as for example, the frequent or probable character of the phenomenon, or on the contrary, its unexpected or unusual character: whether the measures advised by prudence and science to prevent the damage were taken, or whether they were not taken, etc.

■ In the case at bar the heavy rainfall in that place is not by itself an unforeseeable or unexpected event, and the facts showed that after the necessary measures were taken—

---

[14] Coustasse and Iturra, *op. cit.* at pp. 50–51.

the construction of the additional sewer inlets in Street No. 20—the situation was corrected. The second error assigned was not committed.

■ As to the third error, it suffices to say that although it could be concluded that the Municipality of Guaynabo is the one responsible for the proper operation of the pluvial sewerage in Ponce de León Development after said sewerage was handed over by the constructors, that implies a well constructed and adequate sewerage for the location of that place. As we have seen, the original sewerage in Street No. 20, before being corrected, was inadequate. At the trial it was mentioned that the inundation could have been caused by reason that the sewer inlets then existent could have been obstructed with garbage and it was sought to charge the Municipality with fault therefor. What appears from the record on this matter are conjectures, not evidence. In connection with the other elements, as we have stated before, there was uncontradicted evidence. The third error assigned was not committed either.

The fourth and last error challenges the amounts granted by the Superior Court. We do not believe that the same are improper or excessive. Possibly, they could be altered in a few hundred dollars to increase or decrease them, but we believe we are not justified to disturb the weighing made by the trial judge.

As to plaintiff Zenaida Soto Longo, who was operating a nursery with an enrollment of 30 children, and who suffered loss of business equipment and of a 1960 Corvair automobile, which business she had to close, who presented evidence, and to whom, although the complaint was sustained, the trial judge inadvertently failed to fix any compensation, and in view of the fact that the events occurred seven years ago and that the judge who sat at the trial has already resigned his position, so as to avoid contributing to further delay in this

case, and since we have before us the transcript of evidence, we fix to her the compensation of one thousand dollars.

The judgments rendered in this case on September 6, 1966, by the Superior Court, San Juan Part, will be affirmed with the aforesaid modification.

Mr. Chief Justice Negrón Fernández did not participate in the decision of this case.