491 P.2d 1153

**Cash T. SKARDA, Plaintiff-Appellant and Cross-Appellee,**

v.

**Lloyd L. DAVIS, Sr., et al., Defendants-Appellees and Cross-Appellants.**

**No. 9240.**

Supreme Court of New Mexico.

Dec. 27, 1971.

Shipley, Durrett & Conway, Alamogordo, for appellant.

Atwood, Malone, Mann & Cooter, Roswell, for appellees.

## OPINION

McMANUS, Justice.

This suit was brought in the District Court of Lincoln County by plaintiff-appellant Skarda, hereinafter referred to as Skarda, to recover damages for breach of contract for failure to complete the developmental work in a subdivision and for damages for loss of anticipated profits arising out of the defendants' inability to deliver title, subdivide and develop additional real estate which plaintiff had an option to purchase. Defendants-cross appellants Davis, hereinafter referred to as Davis, filed their counterclaim originally seeking judgment on a promissory note and foreclosure of a mortgage. On January 8, 1968, Davis filed a supplemental counterclaim alleging a promissory note for $168,-600 secured by a mortgage, representing the balance due for the land sold to Skarda, default on the note, and praying for judgment and foreclosure. In a second counterclaim Davis alleged Skarda's failure to make installment payments and prayed damages resulting therefrom of $82,713.34. They also requested that the court retain jurisdiction because the cross appellants believed they would be unable to meet obligations to third persons because of Skarda's default. The trial court, sitting without a jury, after four trials and hearings extending over two and one-half years, entered judgment granting Skarda an offset of $51,-369.31 against the sum he owed Davis, $168,600, or a balance due from Skarda to Davis of $117,230.69. Skarda then appealed and Davis cross appealed.

The total purchase price that Skarda was to pay Davis was $248,600. $80,000 was paid on the execution of the contract and the remaining balance of $168,600, evidenced by a note and secured by a mortgage on the subdivision, was payable in semiannual installments of $33,720. These installments were payable, one-half in cash; one-half in contracts on the real estate. In addition, the contract required Davis to complete the developmental work in both subdivisions. It also gave Skarda an op-

tion to purchase a third subdivision called Unit No. 3, to be developed by Davis. The option period was from July 27, 1966 to July 27, 1968. It appears that Davis failed to complete the developmental work on the subdivisions and, on January 27, 1967, Skarda filed suit seeking specific performance to compel Davis to perform the developmental work. At the same time Skarda deposited with the court a certificate of deposit in the amount of $16,860, issued by the Ruidoso State Bank, together with an assignment of real estate contracts having an unpaid balance due of $16,940.83. As mentioned before, each installment, at Skarda's option, was payable one-half in cash and one-half in contracts. Davis answered in the way of a general denial, containing a counterclaim based upon the original note, claiming default in the payment of the installment due January 27, 1967, and asserting the right to declare the full amount of the note due and payable. However, on July 24, 1967, Skarda deposited with the court another certificate of deposit and assignment of contracts to cover the installment due July 27, 1967. A similar certificate of deposit and assignment were deposited with the court on January 26, 1968. It must be noted that Davis complained that these certificates of deposit and assignments remained in the name of Skarda even though deposited with the courts.

The contract also required Davis to discharge an outstanding mortgage against the subdivision in favor of Gibralter Mortgage and Investment Company, which they failed to do. The mortgagee instituted foreclosure proceedings on October 27, 1967. This separate proceeding was resolved prior to the conclusion of the litigation before us. Davis' answer to the second amended complaint was, in effect, a general denial as to each claim for relief and contained a counterclaim which set forth two claims for relief. The first claim sought judgment on the promissory note executed by Skarda or foreclosure of the mortgage. The second claim for relief sought damages for injury to Davis' credit reputa-

tion, loss of interest and reimbursement for interest and penalties paid by Davis, along with other claimed damage. Plaintiff's reply to the counterclaim was a general denial. At this point in the litigation, after hearing the cause, the court made some findings of fact and conclusions of law. On March 28, 1969, the court, by letter, announced the withdrawal of the original findings and conclusions. No formal order of withdrawal was entered. Thereafter, on June 4, 1970, additional testimony was taken and all parties filed additional requested findings and conclusions. On June 15, 1970, the court entered its findings, conclusions and decision which are summarized as follows:

(1) Skarda and Davis entered into a contract for the sale of a partially completed subdivision situated in Lincoln County, New Mexico.

(2) Skarda executed a promissory note in the amount of $168,600 payable to Davis in installments and secured by a second mortgage on the subdivision executed by Skarda and delivered to Davis in accordance with the contract.

(3) Davis agreed to perform certain items of work to complete the subdivision, to-wit:

"2. All rough and finish grading to be completed to meet city specifications.

"3. All water lines and laterals to be installed and furnish plaintiff with letter of acceptance by Village of Ruidoso.

"4. Six inches of compacted gravel shall be installed according to city specifications."

(4) Davis failed to complete the contract in that six inches of compacted gravel have not been installed upon all streets within the subdivision in accordance with city specifications and Davis further failed to install numerous culverts and has not properly completed some of the streets and water lines. Davis' failure to complete the work in accordance with terms of the contract constituted a substantial breach of said contract.

(5) The written contract executed by the parties was silent as to when the work should be completed. The court found that a reasonable time for such performance would be prior to January, 1967, as evidenced by finding No. 17, reading:

"It was contemplated by Plaintiff and Defendants that the work required to be performed by the Defendants as set forth in Finding of Fact No. 10 would proceed in a diligent manner and would be completed as rapidly as reasonably possible, under the circumstances."

"A reasonable time for performance by defendants would require the work to be performed prior to the 27th day of January, 1967."

Additional findings held the cost of completing the subdivision developmental work in accordance with the plans and specifications of the Village of Ruidoso, New Mexico, was in the sum of $50,314.30 and that Skarda sustained additional damages by way of expenses incurred in defending the Gibralter Mortgage foreclosure proceeding and the expense of installing culverts delivered to the subdivisions, for a total of $51,369.31.

The contract between the parties gave Skarda an option to purchase approximately 53 acres of additional real estate described as Unit 3 of Town and Country North Subdivision. This real estate was to be subdivided into an additional 163 lots. The option period was July 27, 1966 to July 27, 1968. Skarda, through his attorney, notified Davis' attorney that Skarda intended to exercise the option. On July 26, 1968, Skarda delivered to Davis' office a letter which contained the following:

"Please be advised that I do hereby exercise my option to purchase Unit Number 3 of Town and Country North Subdivision, as more fully described in the contract of sale of real estate executed between us on the 27th day of July, 1966. It is my position that the Court has relieved me from making any further payments or performing any further obligations which may or might be

required to be performed by me, including the payment of the option money, until such time as you perform the contract in accordance with the Court's decision."

In addition to this option to purchase Unit 3 of the subdivision, it was required that Skarda perform other conditions of the contract which provided that in order to exercise the option Skarda must give 30 days' notice in writing and pay $22,000 in cash. Obviously, from the letter, the cash was not paid.

In its findings, the court declared that the buyer, in connection with his option to purchase Unit 3, did not comply with all the prerequisites of the contract, for example, the payment of the $22,000. Skarda contends that the court erred in finding that the plaintiff Skarda, in order to exercise the option, was required to perform the conditions of the contract by giving 30 days' notice in writing of his intent to exercise the option, and pay $22,000 in money. The contention of Skarda under this particular claim of error was that he was relieved of all of the conditions required to exercise the option except the notice because of alleged financial inability of Davis to perform the contract. It is our opinion that the conditions were absolutely clear, and the avoidance of the payment of the $22,000 made his offer to purchase Unit 3 invalid and the court was correct in so holding. An unequivocal and unqualified expression of intention to exercise an option and the affirmative performance of the expressed method of exercising it are well-established legal principles in New Mexico. Northcutt v. McPherson, 81 N.M. 743, 473 P.2d 357 (1970); Cillessen v. Kona Co., 73 N.M. 297, 387 P.2d 867 (1964).

Cross appellant Davis claims error on the part of the trial court's ruling that the developmental work required by the contract of sale was not completed by Davis, and that the court erred in rewriting the contract, imposing additional requirements, and then granting an offset based

thereon to Skarda. In this connection, a reference to the court's finding of fact No. 18 would appear to be important. It reads:

"Defendants admit they agreed that part of the work to be performed by them was not completed by 27 January, 1967 and admit that they did not perform the obligations under the contract completely prior to 25 July, 1969. The Defendants contend that they have completed the work in accordance with the terms and provisions of the contract. However, the Court finds that they have not, as yet, completed said contract according to the provisions and specifications in the contract in that they have not installed six inches of compacted gravel upon all streets within the subdivision, in accordance with the City specifications and agreement of the parties and have failed to install numerous culverts contemplated by the original contract and plans and specifications and have not properly completed some of the streets and water lines."

This particular finding is supported by the terms of the contract and evidence submitted at the trial.

The court also noted in one of its many findings the letter of the Village utilities director which stated:

" * * * I have found that the necessary work on the road construction, drainage culvert installation and water line installation, has been completed to the specifications and satisfaction of the requirements as set aside in the Land Subdivision Regulations of the Village of Ruidoso, New Mexico."

A look at the contract does not reveal an intention of the parties to rely solely on the Village's acceptance of the subdivision as conclusive or final proof of performance of the contract by Skarda. This would be one of a two-fold requirement; the other being the provision of the contract itself which the court correctly has held was not complied with. See Fox v. Webb, 268 Ala. 111, 105 So.2d 75, 67 A.L.R.

2d 1007 (1958). Also see Helm v. Speith, 298 Ky. 225, 182 S.W.2d 635 (1944).

■ The Davises, in their next point, indicate that they believe that all the obligations of cross appellants Davis under the contract have been performed by them and, further, allege or assume that the cross appellants did not breach the contract. The court has found as a fact that the Davises first breached the contract by failure to perform the contract and develop the subdivision within a reasonable time. There is substantial evidence in the transcript to support such a finding. The court further found that the cost of completing the developmental work which the court said should have been performed by the Davises prior to January 27, 1967 was the sum of $50,314.30 plus the additional expenses, for a total of $51,369.31. It also found that the Davis failure to complete the work in accordance with the terms and conditions of the contract constituted a substantial breach of the contract. It appears to us that the contract between the parties was a bilateral one and that the covenants to provide the lot releases and to make the installment payments are in fact mutual and dependent covenants, and that the cross appellants Davis having breached the contract are not entitled to take advantage of the failure to make the installment payments when due without first tendering performance on their part.

In this regard, see Montgomery v. Cook, 76 N.M. 199, 413 P.2d 477 (1966), where the court found that where the vendors had failed to deposit a warranty deed with the named escrow agent within a certain length of time as provided for in the contract, they could not excuse this substantial and material breach on the basis that the vendees had refused to make the first payment until the deed was delivered. The contract provided that the vendors would deposit the deed with the named escrow agent and that the deed would be delivered to the vendees within one year providing they performed certain land improvements to the satisfaction of the escrow agent. The vendors failed to deliver the deed with-in the one-year period even though the vendees had performed the required land improvements.

The court there also noted that delivery of the deed to the escrow agent was an absolute condition precedent so vital and essential to the contract that a failure to so deliver relieved the vendees of any obligation until such deed was so deposited.

■ In the present case, another allegation of the cross appellants Davis concerned the issue of reasonable time; that is, the reasonable time for completion by Davis of the road work, water lines, etc. It was the court's problem to determine a reasonable time and in this regard it found that a reasonable time for this work expired prior to the date of the first six months' installment payment due to be made by Skarda; that is, a reasonable time expired between July 27, 1966 and January 26, 1967. There is substantial evidence to support the court's ruling in this regard. Real estate developer Jack Stagner testified as follows:

"Immediately after or at the time of the signing of the contract, why then we— Mr. Skarda and myself and Lloyd Senior and Junior, got together and called Jack Kannady over and Mr. Davis said, 'Now, Jack,—' we went over what we had been talking about—and said, 'Now, Jack, we've got to have this thing done. How soon do your think you can do it.' Mr. Kannady stated that without any undue delay due to weather, that he thought that he could do it within three or four weeks, and Mr. Davis said, 'Well, I'm hauling the materials now, and with the weather holding, we should be able to finish up here in three or four weeks.'"

In addition, Mr. Danley, a local contractor, testified as follows:

"Q Mr. Danley, with your other jobs and in your normal course of business as a contractor, if you started work—were told to start work tonight, how long before you would have this job completed?

"A Well, that would depend on how many hours I put in on it.

"Q Well, just in your normal business. You are a road contractor.

"A Yes, sir. On a job this size, how long would it take me?

"A Well, in your operations.

"THE COURT: In other words, if you got this job, when could you have it completed?

"A How long would it take me to complete it?

"THE COURT: Yes.

"A I figured ninety days at the time. I estimated ninety days completion."

■ In answer to the defendants' contention that Skarda was not adversely affected by the passage of six months, testimony indicates that the facts are to the contrary. Mr. Jack Stagner testified:

"The salesmen were complaining that they couldn't properly show the property to sell without proper staking and improvements in, and, of course, with our business being primarily on weekends, with the roads not completed, we were unable several weekends to properly get in or out, and on at least two occasions, I borrowed Mr. Davis' Wagoneer. We didn't have four-wheel drive vehicles at that time to get our customers in and out, * * *."

The court based its findings and conclusions on such testimony and found that Skarda had been damaged by the delay. The delay caused Skarda to purchase and install culverts, water lines, gravel for roads, etc., in order to satisfy past, present and future purchasers of the lots. The evidence substantially supports the court's findings, thus they will stand.

■ Another question was raised by cross appellant Davis to the effect that the utilities director of the Village of Ruidoso was designated by the parties as the sole judge to determine whether or not the work performed by Davis had been approved and accepted by the Village. The court found as a fact that the work was not performed and that there had been no acceptance or approval of the installation of the water lines and laterals and other work to be done by the cross appellants. The court was entitled to hear expert testimony, which it did, and the court found that the work was not performed according to the contract. In our opinion, he was correct in his ruling.

The court further found that the developmental work required by the contract of sale was not completed by Davis and was well within the tenor of the lawsuit to impose an offset based thereon to Skarda. The court also found that the obligations of Davis under the contract had not been completed and there is sufficient evidence for this finding. Further, the court found more than reasonable time had passed with respect to completing the improvements on the property and did not apply an erroneous theory of the case. Over-all, the court found that Davis breached the contract primarily and that Skarda was entitled to damages which is substantiated by the evidence adduced herein.

The judgment in this cause was entered by the court on June 30, 1970 and stated, in part:

"It is Therefore Ordered, Adjudged and Decreed that the Plaintiff is entitled to an offset of $51,369.31, which sum is to be offset against the sum owed by Plaintiff to Defendants of $168,600.00, leaving a balance due from Plaintiff to Defendants of $117,230.69, which Plaintiff is entitled to discharge one-half in cash and one-half in contracts, as provided by the contract."

■ Appellant Skarda claims error in this method of applying the offset. We agree with this contention and remand the cause to the trial court and order that it set aside its former judgment insofar as the method of payment is concerned. Further, the trial court is ordered to grant judgment in favor of Davis in the sum of $168,-600, with Skarda entitled to an offset of $51,369.31. Skarda would then, at his option, be entitled to discharge $84,300 (one-half of the amount due under the contract), by the assignment of real estate contracts

and pay the remaining balance of $32,-930.69 in cash.

Judgment of the trial court is affirmed in part and reversed in part. It is so ordered.

OMAN and MONTOYA, JJ., concur.