**Robert L. REIS and Barbara D. Reis**

**v.**

**George O. SPARKS, Jr., et al.**

**Civ. No. 73–924–B.**

United States District Court,
D. Maryland.

May 30, 1975.

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■■■

■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■

Robert F. Steeves, Washington, D. C., and Jack Garretson-Butt, Baltimore, Md., for plaintiffs.

Sidney L. Bloom, Frederick, Md., for defendants.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This action arises out of a dispute over an option to purchase land. The plaintiffs (sellers) filed this suit seeking a declaratory judgment relieving them from any obligation under the alleged option contract. The defendants (buyers) counterclaimed for specific enforcement of the contract and together with the defendant real estate agent seek damages. The matter is now before the court on cross motions for summary judgment. A careful review of the file and consideration of the arguments and representations of the attorneys at the hearing on the motion leads the court to conclude that there are no genuine disputes as to any material facts surrounding the transactions between the parties. The central issues turn largely upon construction of the documents which make up the transaction. The material undisputed facts are established by admission and stipulation. Accordingly, the case is singularly appropriate for resolution by summary judgment. *See* F.R.Civ.P. 56. Jurisdiction exists because of diversity of citizenship. 28 U.S.C. § 1332. The law of Maryland controls the claims presented.

Plaintiffs, Robert L. and Barbara G. Reis, residents of Mission Hills, Kansas, were the owners in fee simple of a parcel of land consisting of approximately 125 acres with improvements thereon located on Sam's Creek Road at the Intersection of Oak Orchard Road in Frederick County, Maryland.

On April 5, 1971, plaintiffs signed a written listing authorization giving defendant Potter, the real estate agent, the right to sell part of the Reis' farm (60 acres, more or less, with buildings) at a purchase price of $78,500.00. A few days later, on April 11, 1971, plaintiffs signed another listing agreement authorizing Potter to sell the entire Reis' farm, containing 125 acres, more or less, for a purchase price of $125,000.00. Both listing agreements authorized commissions to Potter of ten (10%) percent. Subsequently, on April 30, 1971, Potter sent a general listing letter to various co-operating brokers setting forth the terms and conditions of the plaintiffs' farm listing. Among other matters this letter indicated the purchase price to be $78,500.-00 for 60 acres and all the buildings and $125,000.00 for the full 125 acres and all the buildings.

On May 6, 1971, the defendants, George O. Sparks, Jr. and Elizabeth H. Sparks, made a written offer to purchase approximately 70 acres (rather than 60) of land for a total purchase price of $78,500.00. The offer described a physical line of division by reference to an existing lane and provided for a purchase price adjustment at $700 per acre after a survey to be obtained and paid for by the sellers. In addition, the buyers' offer called for them to have a 5-year option (measured from date of settlement) to purchase the balance of the 125-acre tract for an additional consideration of $31,500.00.

Following the defendants' May 6th offer, plaintiffs made a counter-offer, changing the purchase price for the 70 acres from $78,500.00 to $83,500.00, and changing the survey adjustment from $700.00 per acre to $750.00 per acre, with both parties sharing the survey costs

equally. Also, the plaintiffs' counter-offer raised the option price to $45,000.-00 rather than $31,500.00, and it modified the duration of the option to purchase the remainder. As modified, the option was to run for 2 years from settlement, followed by a 3-year right of first refusal.[1]

On May 8, 1971, the same day on which the sellers made their counter-offer, the buyers accepted the counter-offer, thereby forming a valid contract of sale for approximately 70 acres of land, with an option to purchase the remainder of the 125-acre plot.

Settlement on the 70-acre tract of land was held on or about July 9, 1971. Prior thereto certain settlement documents had been prepared pursuant to the terms of the May 8, 1971 contract. On June 1, 1971, Draper K. Sutcliffe, registered land surveyor, revised his original plat of the 125-acre, more or less, Reis' tract, dated May 5, 1966 and recorded in Plat Book 5, Folio 52, one of the Plat Records in the Office of the Clerk of the Circuit Court for Frederick County, Maryland, to indicate the division of plaintiffs' land into two parcels, one containing 70 acres, more or less, and the other containing approximately 54.230 acres of land. On June 26, 1971, plaintiffs executed a deed conveying the 70-acre plot of land to the Sparks, said deed being subsequently recorded July 15, 1974, in Liber 852, Folio 331, one of the Land Records of Frederick County, Maryland.

At the July 9, 1971 settlement, a second document was approved by the buyers and the representatives of the sellers. This document, which was entitled "AGREEMENT" and was dated July 9, 1971, provided that the May 1971 contract would survive the execution and recording of the deed for the 70-acre tract. The agreement was signed on July 9, 1971 by the defendant-purchasers, and, after forwarding to the plaintiff-sellers in Kansas, it was signed by the sellers on September 2, 1971. In its significant parts, the July 9, 1971 agreement provides:

July 9, 1971

### AGREEMENT

The undersigned agreed with each other and for the consideration of One Dollar ($1.00) paid to each other that the contract dated May 6, 1971, between George O. Sparks, Jr. and Elizabeth H. Sparks, Robert L. Reis and Barbara D. Reis for the sale and purchase of 70 acres located on the west side of Sams Creek Road, 19th Election District, Frederick County, shall survive the execution and recording of the deed for the said described land.

. . . . . .

It is also specifically agreed that the option stated in the contract is to survive the execution and recording of the deed. The option shall be for the purchase of the remaining tract of land owned by Mr. and Mrs. Reis (54.230 acres). The option shall be for two years and at a price of Forty-five Thousand Dollars ($45,000.00). It is understood that for three additional years the buyer has the right of first refusal of any bona fide offer made to Robert L. Reis and Barbara D. Reis with the understanding that the bona fide offer must be acceptable to Mr. and Mrs. Reis. Mr. and Mrs. Sparks are to have seventy-two (72) hours from the time of receiving written notice of such an offer to exercise

---

1. The sellers' counter-offer was in the form of a series of amendments to the defendants' May 6th offer to purchase. In other words, it adopted the basic document by which the defendants offered to purchase, but it substituted certain terms, such as a new price and a new option period. That the sellers merely proposed amendments to the basic document, which was dated May 6, 1971, accounts for the occasional accidental reference by both sides to the "contract" of May 6, 1971.

their option to purchase the remaining tract. This option will commence as of July 9, 1971.

It should be noted that, subsequent to execution of the May 8, 1971 contract of sale, but prior to settlement, plaintiffs had engaged a member of the Frederick County Bar Association to represent them at settlement and advise them as to their rights relative to said contract. At settlement, plaintiffs were represented by the same member of the Frederick County Bar Association. At no time did the plaintiffs ever communicate any objection to settlement to either of the defendants or their representatives. Although their answers to defendants' requests for admissions indicate that the sellers inquired of their Maryland counsel how they could get out of the contract, at or around the time of settlement, he advised them that they were bound and, apparently acting upon that advice, they signed all of the papers necessary to effectuate settlement and to insure that the option survived the recording of the deed.

Following the execution of the contract, the deed, and the settlement agreement, the plaintiffs accepted the purchasers' performance under the contract.

Thereafter, there were no communications between plaintiffs and defendants for over a year and a half. Then, on April 23, 1973, George O. Sparks, Jr. sent a letter by certified mail, return receipt requested, to Dr. and Mrs. Robert L. Reis, Mission Hills, Kansas. The exact language of the letter is as follows:

Dear Dr. and Mrs. Reis:

Pursuant to the contract of sale agreement entered into between yourselves as sellers and my wife and me as buyers of your farm property located in Frederick County, Linganore District, State of Maryland, please be advised that it is our intention to exercise the option, included as part of said contract, to purchase the balance of the land, namely 55 acres, that constitutes part of the entire farm that you formerly owned.

The option price as stipulated in the contract of May 6, 1971 amounted to $45,000.00 for the entire balance of the farm acreage not previously purchased by us in 1971.

We can arrange settlement to your convenience within reason, however, I would assume that you would prefer to handle it as you did before and perhaps be represented at settlement by counsel.

If you are back this way, please drop in to see us.

Sincerely yours,

/s/
George O. Sparks, Jr.

Plaintiffs admit that the April 23 letter was received within the requisite time period and therefore would be considered timely, however, they deny that it adequately accepted the purported option. Plaintiffs never contacted George O. Sparks, Jr., his agents or attorney, subsequent to receipt of the April 23, 1973 letter from Mr. Sparks, to advise of their intention not to sign any subsequently forwarded deed.

On July 5, 1973, James H. Whitney, Esq., of Beall, Whitney and Dumler, Baltimore, Maryland, wrote a letter to plaintiffs enclosing a proposed deed which his firm had prepared conveying the 54.230 acres of land still owned by the plaintiffs. The deed had been prepared by John H. Dumler, Esq., based upon the Sutcliffe survey and also upon the prior deed, sales contract and agreement between the parties. Subsequently, on July 23, 1973, Mr. Dumler mailed a letter to plaintiffs advising that his office had held settlement on the 54.230 acre tract on July 6, 1973, and was holding the sum of $40,497.10 representing the proceeds of sale to them in accordance with the memorandum of settlement

which he also enclosed. While the plaintiffs dispute the defendants' rights under the alleged option, they do admit that assuming a valid option and a valid exercise of it, the July 5, 1973 settlement statement reflecting a proposed disbursement to them of $40,497.10 represents a correct accounting of the proceeds due the plaintiffs at that time.

In the face of the apparent option contract and the ostensible exercise of that option to purchase, the plaintiff-sellers have suggested several theories for why this court should declare them free from any obligation to convey the remaining parcel of land. Those theories are numerous and, at times, confusing. But, they are consistent to this extent: none is persuasive. The main theories advanced by plaintiffs are dealt with below.

 Plaintiffs' first argument is that, under the May 8, 1971 contract and the July 9, 1971 agreement, the defendant-buyers were obligated to pay the plaintiffs $45,000.00 merely to obtain the option to purchase the remaining 54.230 acres. To exercise the option, plaintiffs claim, the defendants would have to pay an additional $40,672.50 ($750 x 54.230 acres). Even at first blush, this suggestion is ludicrous. Its absurdity is underscored upon examination of the terms of the transaction. In the first place, under plaintiffs' theory, the option to purchase the tract would cost $4,372.50 more than the land itself. In the second place, the unimproved 54.230-acre plot would cost $2,172.50 more than the improved 70-acre plot which was sold in 1971. Third, the combined acreage of the two plots would end up costing $44,-172.50 more than the plaintiffs' April 1971 listing price of $125,000. Fourth, and most significant, the agreement of July 9, 1971, taken as a whole, clearly indicates that the option was to be preserved "for the consideration of One Dollar ($1.00)." On the undisputed facts, reasonable minds could not differ. Plaintiffs' strained construction defies common sense and the history of the transactions. Accordingly, it is rejected.

The plaintiffs' next major theory is that the Sparks did not exercise the option prior to the expiration of the option period on July 9, 1973. While admitting that they received George Sparks' letter of April 23, 1973, they contend that his choice of language was insufficiently clear to constitute a valid exercise of the option. To support this argument, the plaintiffs zero in on the phrase "it is our intention to exercise the option." The use of the word "intention," they say, defeats the defendants' claim that the letter exercised the option. This court disagrees. The Sparks' letter of April 23, 1973 adequately exercised the outstanding option. *See Bonde v. Weber*, 6 Ill.2d 365, 128 N.E.2d 883 (1955); 1A *Corbin on Contracts* § 264, at 524, n. 55 (1963); *cf. Foard v. Snider*, 205 Md. 435, 109 A.2d 101 (1954).

 The natural meaning of the April 23, 1973 letter, taken as a whole, is not subject to reasonable doubt. The letter specifically and accurately summarized the major terms of the option contract, and the clear import of the letter is that it was intended to formally notify the sellers of the election to exercise the option. The letter's first full sentence states, *"Pursuant to the contract of sale agreement entered into between yourselves as sellers and my wife and me as buyers* of your farm property located in Frederick County, Linganore District, State of Maryland, *please be advised that it is our intention to exercise the option,* included as part of said contract, *to purchase the balance of the land,* namely 55 acres, that constitutes part of the entire farm that you formerly owned." (emphasis added). That the sentence contains an element of the future tense "does not preclude an interpretation of an immediately operative acceptance." *Corbin on Contracts, supra.* In light of the fact that the buy-

ers' payment of the purchase price for the land covered by the option would occur at a later settlement, their use of the future tense was natural, and the sellers will not be permitted to seize on it out of context to defeat the exercise. *See Bonde v. Weber, supra,* 128 N.E.2d at 888–89 (finding that an option was exercised by letter stating "Please accept this as our formal notice that we intend to accept and exercise our option . . . .").

This interpretation of the letter is reinforced by the positive language regarding settlement in the letter's last sentence: "We can arrange settlement to your convenience, within reason, however, I would assume that you would prefer to handle it as you did before and perhaps be represented at settlement by counsel." That language evinces an unequivocal expectation that there would in fact be a settlement on the optioned property.

Furthermore, this interpretation of the April 23, 1973 letter is reinforced by the buyers' conduct. The letter was sent by certified mail with return receipt requested, and copies were sent to Mary S. Potter, the sellers' real estate broker, who was responsible for the sale. Subsequently, the Sparks obtained a mortgage, arranged for title examination, and unaware of the sellers' uncommunicated reservations, arranged for settlement, on July 6, 1973, in a proceeding substantially similar to the July 1971 settlement. The sellers' real estate broker was notified of the settlement, although it is not clear whether she attended. And, on July 5, 1973, four days before the option period expired, the buyers' attorney mailed a deed to the sellers for their execution.

■ It should be noted that the presettlement contact made with Mary S. Potter would alone be sufficient to exercise the option. *See Schlee v. Bryant,* 247 Md. 689, 234 A.2d 457 (1967). By the terms of the written contract for the sale of the 70-acre parcel and for granting an option for the balance of the farm, it is specifically provided that Potter is the agent of the sellers and is a person designated with whom the purchasers and their agents may deal concerning settlement. In light of her status as the nonresident sellers' real estate broker and of her status as the only identifiable Maryland representative of the sellers, and in light of the fact that the sellers proposed no settlement procedure contrary to the one suggested by the last paragraph in Sparks' April 23, 1973 letter, it was entirely reasonable for the buyers to treat Ms. Potter as the agent of the optionor-sellers for purposes of the July 6, 1973 settlement. Notice to her was notice to them. *See id.* at 461–62. Accordingly, even apart from the linguistic objections to the first paragraph in Sparks' April 23, 1973 letter, this court finds that the option to purchase the remaining 54.230 acres was exercised by the notice to Ms. Potter of the settlement to be conducted by the buyers on July 6, 1973, as well as by the conducting of that settlement. The sellers cannot complain of the ex parte character of the settlement since it corresponded with the procedure followed in July 1971, and since they failed to suggest a procedure of their own. Also, the letter of April 23, 1973 specifically notified the sellers that such a procedure would be followed if no contrary suggestions were made.

■ The plaintiffs' remaining objections to the form of the April 23, 1973 letter are trivial. Sparks' reference to "55 acres" instead of "54.230 acres" does not undo the validity of the attempt to exercise the option since no one could be confused about the identity of the land to which Sparks referred. That George Sparks was the lone signer of the letter is equally insignificant, since he plainly was speaking for himself and his wife. Finally, this court attributes no significance to the buyers' reference in the second paragraph to the "contract of

May 6, 1971." There was only one contract between the parties, and no one suggests that he or she was confused by the reference.[2]

■ As to the remaining general claims of the plaintiffs, all are rejected. The documents which embody the contract of sale and the option are not models of draftsmanship, but they are sufficiently precise to permit their enforcement. The sellers' suggestion of wrongful conduct by the buyers is utterly without support in the record, and plaintiffs' attorney assured this court, at oral argument, that all material facts are now before the court. From everything before the court, it appears that the contract was the product of honest bargaining between the parties. That the sellers had a change of heart *after* entering into the contract is obvious, but it is also unavailing.

■ From what has been said, it is apparent that the buyers are entitled to an order specifically enforcing the contract of May 8, 1971 and the agreement of July 9, 1971, as they pertain to the option to purchase the remaining 54.230 acres of land. The defendant-counterclaimants shall submit an appropriate form for such an order by June 16, 1975.

■ There remains only the issue of the amount of damages to which defendant-counterclaimants are entitled. Maryland law permits a vendee, who has been forced by his vendor to sue for specific performance of a real estate contract, to recover damages resulting from the delay in the transfer, as well as specific performance. *See Rocks v. Brosius*, 241 Md. 612, 217 A.2d 531, 554–55 (1966); *Miller v. Talbott*, 239 Md. 382, 211 A.2d 741, 746–48 (1965); *Brewer v. Sowers*, 118 Md. 681, 86 A. 228 (1912). It would appear that a number of items of damages—and perhaps all of them—can be treated without significant dispute, on the basis of documentary evidence, affidavits and simple arithmetic computations. For example, any additional financing and settlement costs, real estate commission, rents from the tenant farmer, and any unpaid back taxes should be capable of determination on the basis of such simplified proof, without the need for a hearing. Counsel for the parties are directed to confer promptly to determine whether agreement can be reached on the amount of damages. Counsel shall report to the court in writing by June 16 the results of their conference and, if damages have been agreed to, shall set forth in their report an itemization of the elements and the damages. If counsel are unable to agree as to any item or the amount of damage therefor, their report shall indicate the points of agreement and disagreement. If the parties are unable to agree in whole or in part and if the court finds a hearing to be necessary, one will be set promptly to assess damages and enter final judgment.

For the foregoing reasons, it is this 30th day of May, 1975, ordered:

1. That plaintiffs' motion for summary judgment is denied;

2. That defendants' motion for summary judgment on their counterclaim will be granted to the extent of specific enforcement, subject to their filing an appropriate order of judgment for specific enforcement; and

3. That counsel for the parties shall attempt to resolve the remaining damages issues in accordance with the directions of this court as set forth in the above memorandum.

The Clerk shall mail a copy of this Memorandum and Order to counsel for the parties.

---

2. Throughout the transaction and these proceedings, parties and their attorneys have erroneously referred to the May 1971 contract as the contract of May 6, 1971 instead of May 8, 1971. Even in the plaintiffs' amended complaint, the error was carried over. *See* ¶ 21 of the Amended Complaint. However, as there was only one May 1971 contract, erroneous references have never caused confusion as to substance. *See* n. 1, *supra*.